D. G. FOWLE and S. W. VICK v. F. W. KERCHNER and J. L. BOATWRIGHT.

*Liability of Agent—Contract.*

1. A party is an agent or principal in accordance with the intention of the parties to the instrument.

2. An agent, contracting as such, is liable only where he agrees to become responsible for his principal, or where he has been guilty of fraud.

3. Where one signs an unsealed instrument, without any qualification, the court will look at the whole instrument to arrive at the intention of the contracting parties ; and if it be seen that the undertaking is in behalf of another and that there is no purpose to bind the party signing, personally, the form of the signature will not be regarded, nor will he be liable.

4. This rule applies where there is no principal, and that fact is known to the other contracting party.

(*Hite* v. *Goodman*, 1 Dev. & Bat. Eq., 364, cited and approved.)

CIVIL ACTION tried at Fall Term, 1880, of WAKE Superior Court, before *Graves, J.*

In this case numerous exceptions were taken in the court below and argued here, but as in the opinion of this court the case was made to turn upon the construction of the contract betwen the parties, only so much of the case is set out as is necessary to make that part intelligible.

On the 4th day of May, 1876, the plaintiffs and defendants entered into the following stipulation:

" We, as trustees of the Journal Publishing Company, make the following proposition to Messrs. Fowle and Vick, the present owners of the paper: To purchase the entire paper, good will, stock of every kind on hand, and in short, everything appertaining to the concern, as it now stands. We will give $6,500 for the concern upon the following terms: $1,500 to be paid in cash within the next sixty

4

days ; $4,500 to be secured by first mortgage upon the company's entire property, to be paid in equal instalments at one, two and three years, with eight per cent. interest per annum and five shares of stock of the capital stock of the company. The new company to take the property entirely untrammeled, and to be responsible for no debts whatsoever that may now be against the same. The Price mortgage to be settled by Messrs. Fowle and Vick. As regards the debts now due to mortgagees which they cannot realize in money, because payable in type, &c., a private arrangement will be made with them by the trustees.

(Signed)          F. W. KERCHNER.<br>
JOHN L. BOATWRIGHT."

" I accept the above proposition.

(Signed)          S. W. VICK."

" I accept the above proposition.

(Signed)          D. G. FOWLE."

May 4, 1876.

" It is understood the mortgage for $4,500 is to be unendorsed. The Price mortgage amounts to $682, and can be paid in three, six and nine months. The private arrangement about the type, &c., means that the new company will pay for it in money—some $200 or $300 worth, I am told.          (Signed)          W. L. SAUNDERS."

In their complaint the plaintiffs allege, that at the time of the execution of said agreement, the defendants were the promoters of a projected joint stock company which when organized was to be styled " The Journal Publishing Company," and was to be the proprietor and publisher of a newspaper in the city of Wilmington.

That the plaintiffs were the owners of the property and good will of the Wilmington Journal—a paper which had theretofore been published in that city—all of which they agreed to sell, and did sell, to the defendants upon the terms set forth in the foregoing stipulations. That in pursuance

thereof the plaintiffs delivered the said property to the defendants, who accepted the same.

They also paid off the Price mortgage, and have been ever since ready and willing to allow the said projected company to take the said property unencumbered and free from any liability whatsoever; but that the defendants had wholly failed to perform any part of their undertaking.

In their answer the defendants admit that they were promoters of a joint stock company for the purposes set forth in the complaint, but say that the plaintiffs were likewise promoters of said projected company.

That prior to the 4th of May, 1876, when their proposition was submitted to the plaintiffs through the active agency of the plaintiff, Vick, acting for himself and his copartner, Fowle, many persons had agreed to become shareholders in said company, but upon the express condition that the company was not to be organized, or the subscribers required to pay their subscriptions until $5000 of capital stock had been subscribed. That the names of many persons were put upon the list of subscribers by the defendant. Boatwright, under the direction and authority of the plaintiff, Vick. That at a meeting of the subscribers, the said plaintiff being present and assuming to represent the shares of those whose names he had caused to be put upon the list, (which of themselves constitued a majority of the whole number of shares) the defendants with one Atkinson, who declined to act, were appointed trustees of proposed company. That believing the declarations of said plaintiff, and that the subscriptions which he professed to represent were really authorized by the persons in whose names they were entered, and that they were truly represented by him, the defendants proceeded to act in behalf of their associate subscribers, as trustees of the proposed company, and as such made the proposition before recited to the plaintiffs—the same being made in their representative and not in their

individual characters ; and being so accepted by the plaintiffs with the full knowledge and understanding on the part of the plaintiff, Vick, of their said intention, and that they were not to be personally bound for the performance of its stipulations. That the plaintiff, Vick, was not only a subscriber to the stock of the proposed company, but after Atkinson declined, was himself chosen a trustee and as such acted with the defendants. That of the shares subscribed and represented by said Vick, nearly the whole were afterwards repudiated, as unauthorized, by the parties in whose names they were taken; and that notwithstanding the defendants, together with the plaintiff Vick and other genuine subscribers, used every effort to procure other subscribers of stock, they failed to do so, and the project of organizing the company had to be abandoned.

The defendants further admit that in pursuance of the proposition made by them, as such trustees, and soon thereafter the Journal newspaper and its appurtenances were informally delivered to them, and they continued to hold the same and make use thereof until the September following, when despairing of being able to organize the company they discontinued the publication of the paper and left the property in the hands of their business agent for redelivery to the plaintiffs when called for; and they allege that the plaintiffs soon thereafter resumed possession of it, and in January, 1877, resold and delivered the same to one Harris.

As a further defence the defendants allege that it was not intended that the contract should bind them personally, and if it was so written, it was done by mistake, or procured by the fraud of the plaintiff, Vick, and they ask that it may be either rescinded or reformed.

In their reply the plaintiffs deny all fraud and mistake and all knowledge of the defendants' mistake; and while they admit a resale of the property to Harris, they deny

that they assumed possession thereof with the intention of rescinding their contract with the defendants.

On the trial the following correspondence was offered in evidence :

"Yarborough House,

"Raleigh, N. C., 30th April, 1876.

"Dear Sir : As you are aware, I telegraphed on yesterday to Messrs. Vick, Kerchner and Boatwright that all you desired was to be properly secured ; that I would decline the proposition here and put myself in their hands. As I have had no reply, I presume that the answer was satisfactory and that the only question now to be determined is, what is proper security. To hasten that determination, I beg that you will state explicitly what you deem proper security in the premises, so that the parties in Wilmington may act at once.     Very respectfully,

(Signed)     W. L. SAUNDERS."

D. G. Fowle, Esq.

"Raleigh, April 30th, 1876.

"W. L. Saunders, Esq. :

"In reply to the within note, I have to say that the security named in the proposition left by you in Wilmington will be satisfactory to me—that is to say, mortgage notes executed to the amount of the debt due, secured upon all the property of the new company and endorsed by gentlemen of Wilmington known to be good. If the mortgage notes will be good security for me, they will be good for the endorsers, who will also have an eye upon the business, which I cannot. I will say further, to show my disposition in the matter : if Mr. Vick will pay down one half of the debt to Judge Pearson and half the note in bank, I will pay the other half, and take endorsed first mortgage notes of the new company for the amount paid up by me.

Yours truly,

(Signed)     DANL. G. FOWLE."

" Wilmington, N. C., 3d May, 1876.

" My Dear Sir:

" Enclosed I send you proposition of trustees of new Journal Company [the contract sued on] which if you sign please return by next mail. I beg also that you notify me at once by telegram of your action in the premises. In my judgment, the security for the $4,500 is good—that is to say, a mortgage on all the property of the new company. I think upon the whole that the proposition is in as good shape and as advantageous as can be had. It would not have been made but for the danger there was that I might be thrown overboard, by failure to reëstablish *The Journal,* and as it is, my pay is to be only $1,500 per annum, to be increased—so I am told *sub rosa*—if the condition of things will justify. But whatever is done, ought to be done at once, on a good many accounts.

" If I had not formally declined the proposition at Raleigh, the whole thing would have fallen through. I state this so you can see how the ground lies.

" Please telegraph me at once. I have done the best I could for all parties, but a man who has placed himself in the hands of others cannot help feeling nervous about results when of so much importance to him and those depending on him.          Very respectfully,

(Signed)        W. L. SAUNDERS."

" To D. G. Fowle, Esq.

" Kerchner and Boatwright knew nothing of the proposition and memorandum I left here for their consideration until my return.          (Signed)          W. L. S."

In response to issues submitted to them, the jury found that the possession of the property described in the written instrument was delivered by the plaintiffs and accepted by the defendants in pursuance of the terms thereof, and that such possession was not subsequently resumed by the plain-

tiffs with any intention to rescind the contract or release the defendants. They also negatived the allegations of the answer as to the mistake in the parties in the execution of the instrument, and also as to the fraud on the part of the plaintiff Vick, procuring subscribers to the capital stock of the company, and in his representations as to the effect of the contract signed.

After the verdict the defendants moved for judgment, for that, upon a proper construction of the contract sued on, no personal judgment could be rendered against them, but His Honor refused the motion, holding that by the terms of the contract, " the defendants became bound to pay to the plaintiffs, for the property therein described, the sum of fifteen hundred dollars at the end of sixty days, and for the value of a mortgage upon the property for $4,500 payable in one, two and three years with interest at eight per cent., and for the value of five shares in the proposed company, and that plaintiffs became bound to deliver the property to the defendants with the title untrammeled, that is, free from any substantial liability for any debt except the Price mortgage, and also bound to relieve the property from the Price mortgage in a reasonable time."

After verdict and judgment for the plaintiffs the defendants appealed, assigning for error this ruling of His Honor.

*Messrs. E. G. Haywood, Reade, Busbee & Busbee, Merrimon & Fuller, Battle & Mordicai* and *Geo. H. Snow.* for plaintiffs.
*Messrs. Hinsdale & Devereux, G. V. Strong,* and *Gilliam & Gatling,* for defendants.

Ruffin, J., after stating the above. The contract which is the basis of the action, being in writing and its terms therefore fixed, His Honor rightly treated its construction as a matter of law, the determination of which rested with

the court. But we are constrained to say that we cannot concur in the interpretation which he placed upon it.

The legitimate aim of all interpretation is not to make a contract for the parties, or to modify the one they have made for themselves, but simply to ascertain their intentions and to give them effect, if not inconsistent with some policy of the law ; and in the effort to arrive at their intentions, it is always proper for the court to consider not only the precise terms of the instrument, but the circumstances under which it was made, the situation of the parties, and the manner in which they have borne themselves with reference to it. Omitting the question as to the defendants' lack of authority to contract for the " Journal Publishing Company," and for the present supposing them to have been duly authorized, and considering only the terms in which they have expressed their intentions, and the concomitant circumstances, there would seem but little room to doubt, that according to the understanding of the parties, then existing, the defendants contracted in their representative character as trustees, and that their own personal responsibility did not enter into the expectation of any of the contracting parties.

It is true their signatures affixed to the instrument are without any qualification, and in many doubtful cases, this circumstance has been seized upon by the courts as tending, *prima facie,* to show a purpose, on the part of the parties signing, to oblige themselves personally. But the signatures apply to the entire context of the instrument, and if from this it be plainly seen that the undertaking is in behalf of another, then the courts without regard to the form of the signature must so construe it, and not treat it as the personal contract of the party signing it.

In 1 Parsons on Contracts, 54, it is said "that the more recent cases and the better reasoning, are, for determining in each instance and with whatever technical inaccuracy the

signature is made, from the facts and the evidence, that a party is an agent or a principal in accordance with the in-tention of the parties to the instument."

In *De Wolf* v. *Insurance Company*, 8 Pick., 56., Chief Justice PARKER declared that the rule that the agent to bind his principal must sign the name of the principal, applies only to deeds, but that, as to other instruments, their effect must depend upon the intention with which they are made, and if from the whole instrument it can be ascertained that the party signing it intended to act for another, and not for himself, then he will not be bound.

In other words the courts now regard the particular form of executing a contract, not under seal, by an agent, as be ing wholly immaterial, provided the context of the instru-ment, and the circumstances under which it was executed, show that it was a ministerial act on his part.

Recurring then to the contract now under consideration, we see that not only did the proposition which the defend-ants submitted to the plaintiffs, and which upon their ac-ceptance became the contract between the parties, expressly purport to be made *as trustees* and in behalf of the projected company ; but, as if to exclude by express provision all pos-sibility of personal liability on their part, the defendants in-dicate the company's property as that which should be given in mortgage for the debt, and the company's funds as the source of its ultimate payment, and if to this we add the further fact disclosed in the correspondence between the plaintiff, Fowle, and the witness, Saunders, that at one time he insisted that the mortgage upon the company's property should be endorsed by parties " known to be good," but that he finally, upon being assured by Saunders, that the prop-osition as submitted was as advantageous as could be had, agreed to accept it " unendorsed," it would seem, if we are to adopt the intentions of the parties as the governing rule

of construction, absolutely to exclude all thought of responsibility on the part of the defendants personally.

Indeed we understand plaintiffs' counsel to admit so much as this, when in their brief, they say, that they do not mean to assert that the contract in terms bound the defendants to pay the amount of the purchase money out of their own pockets, but that it " operated as a guaranty by the defendants to the plaintiffs of the success of the scheme for organizing the company, and that it would perform what the defendants had agreed in its behalf."

But we find no such stipulation in the writing; nothing beyond a proposition as trustees to purchase for the benefit of the company : an agreement to mortgage the company's funds ; a refusal to procure any indorsement of the mortgage, and the consent of the plaintiffs to accept it without such indorsement.

It is too apparent that all parties with equal opportunities for information were inspired with confidence in the successful organization of the proposed company, and that they dealt with each other on the footing of this assurance ; and that *their contract,* not contemplating a failure of the scheme, did not provide, and was not intended to provide, for such a state of affairs—and for the court, now to make it do so, would be to go outside of the intentions of the parties, and to make and not to interpret the contract.

Neither do we feel at liberty, so plainly have the parties manifested their intentions, to vary this construction of the contract, because of the fact that the defendants had no principal capable of conferring upon them the authority to act as its agents —it being apparent, both from the pleadings and the proofs, that the plaintiffs had full knowledge of their want of authority.

It is unquestionably true that all the authorities concur in saying, that when upon a written contract in which mention is made of both principal and agent, he who is styled

the principal, should not be bound, it furnishes a strong argument for holding the agent to be bound. The rule, as one of construction, has been applied to those cases in which upon the face of the instrument, it was left doubtful whether the named principal, or the party signing, was intended to be bound, and *a fortiori*, would it apply to a case in which, like the present, it appeared that there was no principal to be bound—that is to say—if there could be the least doubt in the minds of the court, arising from the terms of the contract or the circumstances surrounding the case, as to the party intended to be charged.

The rule however is, as we. have said, one of construction, and by no means a legal conclusion. The parties having entered into a contract are presumed to have contemplated a performance of its stipulations by some one, and since the principal cannot be held to such performance, it must have ueen the intention of the parties that the agent should be—the maxim being *ut res magis valeat quam pereat.* But the rule itself has no application to a contract in which there is a clear manifestation of a purpose to bind the principal, and the principal only, accompanied with a refusal on the part of the agent to obligate himself.

When the form of the instrument clearly indicates it to be done in behalf of another, the courts must give it the construction that it is not the personal contract of the party signing the instrument, and no consideration respecting the plaintiff's remedy against any other party should prevail with the court to change the contract—say the courts in *Rice* v. *Gove,* 22 Pick, 158; *McBeath* v. *Haldimand* 1, Term Rep., 172.

It is just this distinction that has been taken in the case of an agent contracting in behalf of a foreign principal. There, if the language of the contract is at all ambiguous, so as to leave it doubtful to whom the credit was given, the principal or the agent, the circumstance that the principal

is resident abroad may be taken into consideration in deter-
mining that question—it being reasonable, in a case admit-
ting of doubt, to suppose that the other contracting party
trusted the agent residing at home and subject to the laws
and process familiar to himself, rather than one living be-
yond the reach of domestic laws.

But still it is a question of intention, and if the contract
be in writing, and its terms clearly manifest a purpose to
bind the principal, though a foreigner, it must be deemed
to be the final repository of the intention of the parties, and
its construction and effect should not be varied so as to
charge the agent in consideration of its unreasonableness or
inconvenience. *Bray* v. *Kettell,* 1 Allen, 80.

The general rule is that whenever a party assumes to act
as agent for another, if he have no authority or if he exceed
his authority, he will be held to be personally liable to the
party with whom he deals, for the reason that by holding
himself out as having authority, he misleads the other party
into making the engagement. But this rule is founded
upon the supposition, say the court of appeals of Kentucky
in *Murray* v. *Caruthers,* 1 Met., 71, that the want of authority
is unknown to the other party, or if known, that the agent
undertakes to guaranty a ratification of the act, and when
the want of authority is known, and it is clear that the agent
did not undertake to guaranty a ratification, it results that
the agent is not personally bound.

Here, it is manifest both from the pleadings and the
proofs that the plaintiffs had full knowledge of the non-
existence of the "Journal Publishing Company" as a cor-
poration ; and the terms of the written contract, as read in
the light of the conduct of the parties, leave not the least
reason to suppose that there was any undertaking on the
part of the defendants to become sponsors for the proposed
new company. Indeed they preclude any such hypothesis.

In Story on Agency, § 265, it is said, there are exceptions

to the rule that persons contracting, as agents, are held personally responsible when there is no principal to whom resort can be had, and as an illustration is cited the case of an agent who should declare that he had no authority to contract for his principal, and yet refused to bind himself personally; and again in section 287, the case is put of a voluntary society, the members of which having subscribed for some charitable purpose engage an agent to procure supplies, and he should do so with an understanding on the part of those furnishing them, that they should rely for their reïmbursement solely upon the funds that should from time to time be subscribed. In such cases the author declares there could be no doubt, that neither the subscribers nor the agent would be personally liable.

In *Smout* v. *Ilberry*, 10 M. & W., 1, an agent, to whom no fraud was imputable and who had assumed no personal obligation, was held not to be responsible, though as the court declared they felt themselves " pressed with the difficulty that if the agent were not liable, there was no one that could be liable on the contract."

In *Wake* v. *Harrop*, 1 H. & C. (Exchequer), 200, the court say, they are not bound to say whether the intended principals are liable; it is enough that the intention was that the defendants (the agents) should not be personally liable, and that even if the principals were not liable, there could be no good reason for suing the agents when there was an agreement that they should not be personally liable.

In the absence of all agreement, express or implied, to be personally bound, there can be found no case, we apprehend, in which an agent has been held responsible who has not been guilty of fraud, either actual or constructive. If, having no authority and so knowing, he yet contracts as though he had, then upon the plainest principles of right he should be held responsible because of his positive fraud; and so, if honestly believing himself to have authority while in fact

he has none, he contracts, he will likewise be held responsible, for though not acting *mala fides* he has still stated to be true what he did not know to be true, and if his wrong should work an injury to an innocent person, who has relied upon his assertion of authority, it is but just that he should make compensation.

The true principle derived from all the cases, is, that an agent can be made liable upon a contract made for his principal, only, upon the ground that he has agreed to be responsible or that he has been guilty of some wrong or omission of right; and since as we have seen neither of these circumstances attach to the contract made by these defendants, it follows that they cannot be responsible.

Independently of any agreement on their part, and without reference to any question of authority or fraud, the defendants most undoubtedly would have been liable if the consideration or benefit had moved to them *personally.* But their contract was made as trustees, and as such they received and used the property delivered to them by the plaintiffs; and, so far as the case discloses, not a particle of personal benefit did they or either of them derive from it. This distinction we think clearly exists and was recognized by this court in *Hite* v. *Goodman,* 1 Dev. & Bat. Eq., 364.

Judgment reversed and *venire de novo.*

Error.                                    *Venire de novo.*