LEROY v. JACOBOSKY.

(Filed November 15, 1904).

1. GUARDIAN AND WARD—*Contracts.*

A guardian is not personally liable on a contract to convey the lands of his ward, the grantee knowing he was acting for his ward.

2. CONTRACTS—*Guardian and Ward—Damages—Assumpsit—Action on the Case.*

An agent, or one acting in a representative capacity, who fails to bind his principal, may be held liable in an action on the case, or on an assumpsit, or for damages, although not liable on the contract as made.

3. GUARDIAN AND WARD—*Contracts—Damages—Agency.*

In an action against a guardian who purported to make a contract which he had no authority to make, the measure of plaintiff's damages is what plaintiff lost by reason of the false assertion of authority.

4. ATTACHMENT—*Guardian and Ward—Clerks of Court.*

Money from the sale of land which belonged to wards is subject to attachment in the hands of the clerk after the confirmation of the sale.

5. RECORDATION—*Contracts—Probate—The Code, sec. 1246, subsec. 9.*

Where the parties to an instrument requiring registration are non-residents, except one, the instrument may be probated by proving the handwriting of the non-resident by the resident party.

6. VENDOR AND PURCHASER—*Contracts—Damages—Measure of.*

The measure of damages for failure to convey land under a written contract is the difference between the contract price and the market value thereof.

7. CONTRACTS—*Guardian and Ward.*

One who signed on April 28th a contract to convey land on April 23d of the same year is not bound because of the impossibility of performance of such contract.

8. GUARDIAN AND WARD—*Contracts.*

Where a guardian contracts to convey the land of his ward on or before a certain date, the signing of the contract after that date by the ward does not operate as a ratification of the agreement of the guardian.

ACTION by J. H. LeRoy against H. Jacobosky, S. H. Weisel and others, heard by *Judge W. A. Hoke* and a jury, at March Term, 1904, of the Superior Court of PASQUOTANK County.

PLAINTIFF'S APPEAL.

The defendants H. Jacobosky, A. Jacobosky and S. H. Weisel were on March 13, 1903, the owners as tenants in common with Rebecca Weisel and Sadie Weisel, the last three being infants, the said H. Jacobosky being their general guardian, residing in the State of Virginia. On the said 13th day of March, 1903, the said H. and A. Jacobosky, under the firm name and style of Jacobosky Bros., and the said H. Jacobosky as guardian of the said wards, entered into a written agreement with the plaintiff as follows:

"Portsmouth, Va., March 13, 1903.

"In consideration of twenty-five dollars paid to us, we hereby agree to sell to J. H. LeRoy the property and wharf on Water Street in Elizabeth City, N. C., known as the 'Weisel property' for the sum of $22,500, leaving a balance due us of $22,475. This option holds good from this date until April 13, 1903. Said property cannot be delivered to purchaser until present leases expire, which are known to Mr. LeRoy.

(Signed)        "Jacobosky Bros.

"H. Jacobosky,

*"Guardian of Simon, Fannie and Sadie Weisel.*

"J. H. LeRoy.

"S. H. Weisel."

The said S. H. Weisel reached his majority prior to April 23 1903, on which day he signed the agreement. After the execution of the agreement the parties tenants in common, the adults in their own behalf and the infants appearing by their next friend, filed their petition in the Superior Court of Pasquotank County asking for an order for a sale of the property. After proper proceedings had in the premises the land was brought to public sale by the commissioner duly appointed, and bought by B. F. White and J. B. Flora at the price of $25,000. The sale was confirmed and title made to the purchasers. The defendants having refused to convey to the plaintiff, who duly tendered the amount of the contract price within the time named, he brought this action for the purpose of recovering damages for the breach of the contract. The Court submitted the following issues to the jury:

1. "Are the defendants H. and A. Jacobosky indebted to the plaintiff on breach of contract, and if so in what sum?"

2. "Is the defendant S. H. Weisel indebted to the plaintiff, and if so in what amount?"

The plaintiff introduced the contract. He testified that he was present at the time the contract was signed, and that he knew nothing of the ages of the infants except that it was signed as guardian for them; that he gave a check for $25, and as he went out of the front door of the defendant's store after the check was given, the defendant H. Jacobosky said that the Weisels were minors and it would be necessary to obtain an order of Court to make title and that he would get the order. He also said if any one raised the price he would buy it in and make the title. The plaintiff testified that he tendered the money. The defendants H. and A. Jacobosky said that they admitted that the witness had offered to comply with this contract, but that S. H. Weisel had since become of age and refused to carry it out. Certain letters were put in evidence tending to show a demand of the plaintiff and refusal of the defendants to comply with the contract. The Court charged the jury that if they believed the evidence they should answer the first issues "Yes, twelve twenty-sevenths of $25,000 and $25" (that being the interest of the defendants H. and A. Jacobosky). The plaintiff excepted, claiming the entire damage or difference in the contract price and the amount for which the property sold. From a judgment on the verdict the plaintiff appealed.

*E. F. Aydlett,* for the plaintiff.
*Ward & Thompson,* for the defendants.

Connor, J., after stating the facts. The only question presented upon the plaintiff's appeal is whether the defendant H. Jacobosky is personally liable on the contract in respect to the interests or shares of his wards, Sadie and Rebecca Weisel. It will be well to bear in mind the fact that

the action is on the contract and for breach thereof; that the issue is directed to the inquiry of the indebtedness arising from a breach of the contract. The brief of the plaintiff's counsel maintains and cites authorities to show that the defendant guardian is personally liable in the same manner and to the same extent as he is on the contract in respect to his own share or interest in the land. He concedes that there can be no decree for specific performance as against the infants. The defendant concedes that he had no authority as guardian to enter into any contract to sell the real estate of his wards. He says that this was well known to the plaintiff; and that by his signature as guardian the plaintiff knew that he was contracting only in his representative capacity and not personally. The plaintiff says that, conceding this to be true, the law, without regard to the intention of the parties, fixes the defendant with a personal liability; that some one was to be bound, and if the infants were not bound by the contract the guardian must be so personally or there was no contract.

It has been said by quite a number of judges that when by reason of the absence of authority the principal is not bound upon the contract the agent must be. *Elsworth, J.,* in *Ogden v. Raymond,* 22 Conn., 379 (58 Am. Dec., 429), says: "We are aware that it is not unfrequently laid down as a rule of law that if the agent does not bind his principal he binds himself; but this rule needs qualification and cannot be said to be universally true or correct." *Mr. Meacham* says: "The rule sometimes asserted that wherever the agent fails to create a right of action against his principal upon the contract he makes himself liable thereon cannot be sustained as a general rule." Meacham on Agency, sec. 550. Referring to the cases holding this doctrine, *Selden, J.,* says: "The authority of these cases has been somewhat shaken, and in England, as well as in several of the United States, the

principle upon which they rested, if they are supposed to present the only ground of liability of the agent, has been substantially repudiated. If it were necessary in disposing of the present case to decide the question whether, as a general principle, one entering into a contract in the name of another without authority is to be himself holden as a party .to the contract, I should hesitate to affirm such a principle. By that rule courts would often make contracts for parties which they neither intended nor would have consented to make." *White v. Madison,* 26 N. Y., 117, approved in *Tay-lor v. Nostrand,* 134 N. Y., 108; *Wallace v. Bentley,* 77 Cal., 19, 11 Am. St. Rep., 231; *Ballou v. Talbot,* 16 Mass., 461, 8 Am. Dec., 146; *Duncan v. Niles,* 32 Ill., 532, 83 Am. Dec., 295; *Bartlett v. Tucker,* 104 Mass., 336, 6 Am. Rep., 240. Some of the authorities hold that in all written contracts, except specialties, if the pretended agent has so worded the instrument as to make it appear that he is acting for and on behalf of another and not himself—having no authority to do so—he binds himself personally and will be liable in an action on the contract itself, for the reason that he must have intended to bind some one; and if he was unauthorized to bind the principal he is estopped to deny that he intended to bind himself, as in that case no one whatever would be bound. But the objection to this doctrine is that it would require the Court to make a new contract for the parties or one into which they have not themselves entered, and the courts now generally repudiate it. While the decisions are not uniform, the great weight of modern authority is that the agent is not personally bound by the contract itself and cannot be held liable in an action thereon." Reinhardt on Agency, sec. 307; Clark on Contracts, 274; *Hall v. Crandall,* 29 Cal., 567, 89 Am. Dec., 64. The same view has been held by this Court in *Delius v. Cawthorn,* 13 N. C., 90. The defendant executed a note payable to the plaintiff in the name

LeRoy v. Jacobosky.

of one Johnson by himself as agent. The action was upon the bond. It was shown that the defendant had no authority to sign Johnson's name. The Court held that the action could not be maintained; that it was not the bond of the agent. *Toomer, J.,* says: "It is believed the elementary writers, in speaking of the personal liability of the agent because he has no responsible principal, do not mean to convey the idea that the instrument becomes the deed of the agent when it has been signed, sealed and delivered in the name of the principal, who was bound on its face, merely because the agent had exceeded his authority or had acted without authority. But they intend simply to declare his personal responsibility, which may be enforced by bill in equity on the ground of fraud, or by special action on the case." The learned Judges cites a number of cases to sustain the conclusion reached by him. *Judges Henderson* and *Hall* wrote concurring opinions. In *Ballou v. Talbot, supra,* the action was upon a promissory note signed by the defendant as "agent for David Perry," and the Court held that an action could not be maintained against him on the bond, but that he would be responsible in a special action on the case. This opinion was written by *Parker, C. J.,* and has been followed by the Massachusetts Court. In *Russell v. Koonce,* 104 N. C., 237, *Smith, C. J.,* says: "The defendant does not become individually liable because his authority to bind his principal is disowned by the latter unless the consideration. is received by the agent, out of which arises an implied promise to pay. In such case the agent may become personally answerable upon the contract, but otherwise the action must be for damages for his false assumption of his authority to act"—citing *Delius v. Cawthorn, supra.* The case cited by the plaintiff in which the guardian has been held personally liable upon promissory notes executed by him in his representative capacity, show that he received the consideration,

136——29

or that some service was rendered, as in *Fessenden v. Jones,* 52 N. C., 14, 75 Am. Dec., 445, where the plaintiff was a physician and was called to attend the slaves of the defendant's ward, and the guardian was held personally liable in an action of assumpsit. Of course he could reimburse himself out of the estate of his ward. In *Devane v. Royal,* 52 N. C., 426, the plaintiff rendered service to the executor as attorney in the settlement of the estate. He was held personally liable, the Court saying: "If the disbursement be a proper one, she will be allowed a credit in the settlement of her account with the estate." *Kessler v. Hall,* 64 N. C., 61. In *McLean v. McLean,* 88 N. C., 394, *Ashe, J.,* says: "It is well settled by the almost unvarying current of authority that the promissory note of an administrator or an executor, founded upon the consideration of forbearance or the possession of assets, will be binding upon him in his individual capacity, although he should sign the note as 'administrator or executor.'" It will be observed that the note must be founded upon sufficient consideration "as of assets or forbearance." This Court in *Bank v. Morehead,* 122 N. C., 318, followed the early cases and held the executrix liable personally upon a note executed in her representative capacity in consideration of the surrender of a note against her testator and the extension of time for payment. The decision was put upon the fact that she had assets and obtained forbearance. The first case in our reports is *Sleighter v. Harrington,* 6 N. C., 332. *Ruffin, J.,* rests the decision of that case upon the fact that the executor had assets applicable to the payment of the debt surrendered, saying that the debt "must be such as the creditor would be entitled to recover if he were then suing the executor in his representative capacity for his debt. The executor is the mere holder, as it were, of money which is in justice and conscience the money of another person." The question was again before the

Court in *Williams v. Chaffin,* 13 N. C., 333, when the same
eminent Judge said that if there were no other consideration,
and the executor had no assets applicable to the debt, the
promise was void. How far the doctrine has been modified
by the change in the law by which the status of the creditor
of a deceased person is fixed in respect to assets it is not nec-
essary to inquire. It must be conceded that the authorities
are not uniform. In *Taylor v. Davis,* 110 U. S., 330, and
*Mason v. Caldwell,* 5 Gilmore, 196, 48 Am. Dec., 330, it is
held that the person making the contract in his representative
capacity without authority is bound upon the contract. After
reviewing the cases which had been then decided, *Elsworth,
J.,* in *Ogden v. Raymond, supra,* says: "The question in these
cases will be found to be one of construction of the language
and meaning of the person who attempts to act for another,
and is a question often attended with great difficulty and
doubt; but when the intention is ascertained, that intention
should ever be the rule for deciding whose contract it is.
The cases are exceedingly conflicting and unsatisfactory,
though they contain some general principles universally
acquiesced in." All of the authorities concur in holding that
the Court will ascertain the intention by reference to the
written contract and the surrounding circumstances. Re-
ferring to those cases in which the Court have rejected the
words showing that the contract is signed as agent, or as in
this case "guardian of Simon, Sadie and Rebecca Weisel,"
and holding the agent liable personally upon the contract.
*Mr. Meacham* says: "This, as has been well said, is rather
to make a new contract for the parties than to construe the
one which they have made for themselves. When, however,
the agent is undertaking without authority to bind another,
and has used apt words to bind himself, there is abundant
reason and justice to hold him liable upon the contract itself
as made. * * * The agent is only liable on the con-

tract in those cases in which he has used apt words to bind himself, or has expressly pledged his personal responsibility, or in which the credit is given to him personally." Meacham on Agency, 550. We do not think that the words "guardian," etc., can be rejected as surplusage or treated as *descriptio personarum*.

It will be noted that the property belonged to the defendant and his wards as tenants in common. The contract was signed "Jocobosky Bros." first, and "H. Jacobosky, Guardian, etc.," next, and then by the plaintiff. He must have thereby known that the defendant was making the contract in a dual capacity. He accepted it with this knowledge. In a few moments after signing, and before he left the store, the defendant called his attention to the fact that as the Weisel children were infants it would be necessary to obtain an order of the Court to make a perfect title. The plaintiff certainly did not expect the defendant as guardian to make a deed. He would not have been under any obligation to accept such a deed. The conduct of the parties shows clearly that they expected and intended that an order of sale should be obtained. The defendant promptly employed learned and able counsel to procure the order. No other construction can be reasonably put upon the contract than that the defendant was acting, in respect to the interests of his wards, in his representative capacity. To do otherwise would be to misinterpret the language and conduct of the parties. The language of *Judge Toomer* is very much in point. In *Delius v. Cawthorn* he says: "The present action can only be sustained by making the instrument the deed of the defendant. Is there any principle of law which can so entirely defeat the intention of the parties and prevent the truth of the transaction as to change the nature and character of the instrument and make it the deed of the defendant?" *Ruffin, J.*, in *Fowle v. Kerchner*, 87 N. C., 49, says: "The legitimate aim of all

interpretation is not to make a contract for the parties or to modify the one they have made for themselves, but simply to ascertain their intentions and give them effect if not inconsistent with some policy of the law, and, in the effort to arrive at their intentions, it is always proper for the Court to consider not only the precise terms of the instrument, but the circumstances under which it was made, the situation of the parties, and the manner in which they have borne themselves with reference to it." After citing authorities showing the trend of judicial opinion upon the subject, the learned Justice says: "In other words, the courts now regard the particular form of executing a contract, not under seal, by an agent as being wholly immaterial, provided the context of the instrument and the circumstances under which it was executed show that it was a ministerial act on his part."

We are of the opinion that the defendant H. Jacobosky is not personally liable on the contract in respect to the shares of his infant wards. It does not follow, however, that because an agent or one acting in a representative capacity is not liable on the contract as made, a party who is misled or who parts with something of value or otherwise acquires legal rights is without remedy. As is said by the Court in *Delius v. Cawthorn, supra,* in a special action on the case under the former system of pleading and practice, or under our present system in a civil action either upon an implied assumpsit, when he has received the consideration, or for damages, he has an ample remedy. *Selden, J.,* in *White v. Madison, supra,* says: "Whenever a person enters into a contract as agent for another, he warrants his own authority unless very special circumstances or express agreement relieve him from that responsibility. An action upon such warranty must always be appropriate when personal liability attaches to an agent in consequence of his contracting without authority." *Parker, C. J.,* in *Taylor v. Nostrand, supra,* referring

to this case, says: "In a carefully considered opinion by *Judge Selden,* in *White v. Madison,* the conclusion was reached that the liability of the agent rests on the ground that he warrants his authority, not that the contract is to be his own; and on the question of damages it was held that the agent's liability 'is not necessarily measured by the contract, but embraces all injury resulting from his want of power, which was held to include the costs of an unsuccessful action against the principal." *Russell v. Koonce, supra.* The measure of damages is what the plaintiff lost by reason of the false assertion of agency or of authority, or the amount of money paid out, or the value of the service rendered, or such special damages sustained by the plaintiff by reason of the defendant's wrong in undertaking to act for another without authority. *Hare v. Crandall, supra.* If the plaintiff had set out in his complaint the contract with a statement of the facts out of which his cause of action accrued, he would have been entitled to have had appropriate issues submitted to the jury presenting the several phases of his case, but he simply alleges that the defendants contracted with the plaintiff in writing to sell and convey to him that certain piece of property," etc. In making his proof he introduces the contract, by which it appears that, in respect to the shares of the infants, the defendant H. Jacobosky contracted as guardian. He did not ask permission to amend his complaint but rested his right to recover upon the theory that the entire contract was the personal obligation of the defendant. There was no allegation upon which he could recover damages of the defendant upon this view of the case. His measure of damages in the action upon the contract as against Jacobosky Bros. is the difference between the contract price and the market value of the land ascertained by a public sale. In an action against H. Jacobosky for representing himself as having authority to make the contract to sell the infants' share

or interest entirely different questions in regard to damages
were involved.   The action in one respect was for breach of
contract, in the other for asserting that he had authority to
make the contract for his wards.   These separate and dis-
tinct actions could not be tried upon one issue and upon the
pleadings, but one issue could have been submitted.   This
is not a mere matter of form, but of substance, affecting the
substantive rights of both parties.   We are, however, of the
opinion that in any aspect of the case his Honor correctly
instructed the jury.   Mr. Reinhardt in his work on Agency,
sec. 308, says: "If the party with whom the agent has con-
tracted knew that the agent had no authority, or was cogni-
zant of all the facts upon which the assumption of authority
was based—as for example, when both parties labored under
a mistake of law with reference to the liability of the princi-
pal—the agent is not liable either in tort or upon the con-
tract." *Newport v. Smith,* 61 Minn., 277 ; *Baltzen v. McOlay,*
53 N. Y., 467.   In *Michael v. Jones,* 84 Mo., 578, the Jus-
tice writing for the Court says: "But I am satisfied that un-
der the best considered modern decisions the principle in-
voked by the plaintiff cannot be carried to such an extent.
The true rule, I think, is that when all of the facts are
known, and the mistake is one of law as to the liability of
the principal, the fact that the principal cannot be held is no
ground for charging the agent with liability." *Ruffin, J.,* in
*Fowle v. Kerchner, supra,* says: "The general rule is that
whenever a party assumes to act as agent for another, if he
has no authority, or if he exceed his authority, he will be
held to be personally liable to the party with whom he deals,
for the reason that by holding himself out as having authority
he misleads the other party into making the agreement.   But
the rule is founded upon the supposition   *   *   *   that
the want of authority is unknown to the other party, or, if
known, that the agent undertakes to guaranty a ratification

of the act, and when this want of authority is known, and it is clear that the agent did not undertake to guaranty a ratification, it results that the agent is not personally bound." Of course, for manifest reasons, there is no suggestion that the guardian undertook to guaranty the ratification of his wards. "In the absence of all agreement, express or implied, to be personally bound, there can be no case, we apprehend, in which an agent has been held responsible who has not been guilty of fraud either actual or constructive." *Fowle v. Kerchner, supra.* There can be no fraud when the person with whom the agent deals knows that he has no authority to bind his principal, or knows the character and extent of his agency. An examination of the many cases cited by the authors of works on agency discovers an absence of uniformity upon this question. It may be traced to the effort of the judges to escape from the early decisions holding that the agent acting without or in excess of authority becomes liable upon the contract, discarding the intention of the parties and other considerations. The liability rests upon other and we think more scientific principles. The remedy for the injured party is ample.

The defendant also calls our attention to authorities holding that "a contract by a guardian to sell the ward's real estate in advance of legal authority, is contrary to public policy and void." 15 Am. & Eng. Ency. (2 Ed.), 57; *Zander v. Feely,* 47 Ill. App., 659. The law expressly provides the manner and purpose for which a guardian may sell his ward's real estate. The facts of this case show the danger of permitting a guardian to enter into a contract otherwise than as provided by law. After the defendant made this contract, it was to his interest to prevent the land bringing more than the contract price, and although he did not do so, and the commissioner obtained more than the price agreed upon, it may be easily seen how, if so disposed, he may have suppressed

the bidding. We think the principle is founded upon reason and sound policy. Of course if the contract was void for the reason assigned, the Court would not enforce or give damages, for a breach of it but leave the parties as it found them. *York v. Merritt,* 77 N. C., 213. The judgment must be Affirmed.

DEFENDANT JACOBOSKY'S APPEAL.

The main facts in this appeal are similar to those in that of the plaintiff, and in addition thereto the following will be sufficient to show the grounds of the defendant's exceptions:

The defendants moved to dismiss the attachment proceedings upon the ground set out in their affidavits. *Judge Council,* who presided at the previous term of the Court, found the facts in regard thereto and refused the motion, and the defendants entered their exception. They further contend that the attachment should not be levied upon the money in the hands of the Clerk of the Superior Court, and his Honor refused to dismiss for that reason. The defendants objected to the introduction of the contract for that the same had not been properly probated. The record shows that the execution of the contract was proved as to Jacobosky Bros. and H. Jacobosky, guardian for Simon, Fannie and Sadie Weisel, upon the oath and examination of J. H. LeRoy, one of the parties thereto, and as to him the execution thereof was acknowledged; that as to S. H. Weisel the execution was acknowledged before a notary public in Norfolk, Va., whose certificate was afterwards submitted to the Clerk of the Superior Court of Pasquotank County and the instrument ordered to be recorded. There also appears in the record an affidavit, bearing date March 21, 1903, made by J. H. LeRoy before the Clerk of the Superior Court to the effect that he knew the handwriting of Jacobosky Bros. and H. Jacobosky, having often seen them write; and further that the name of

Jacobosky Bros. and H. Jacobosky is in the handwriting of H. Jacobosky and A. Jacobosky Bros., and that both were present when H. Jacobosky signed the same, and both adopted the signature. His Honor admitted the contract and the defendants excepted.

Connor, J., after stating the facts. We concur with *Judge Council* in his conclusions both of law and fact upon the motion to dismiss. There were no antagonistic relations on the part of counsel. We also concur in the conclusion that the money proceeds of the sale of the land in the hands of the Clerk was subject to attachment. The sale had been confirmed and the cash payment made to the commissioner, who had paid it to the Clerk. He held it subject to the immediate demand of the defendant. The question is expressly so decided in *Gaither v. Ballew,* 49 N. C., 488, 69 Am. Dec., 763, and the authorities reviewed overruling *Alston v. Clay,* 3 N. C., 220, and *Overton v. Hill,* 5 N. C., 47; *Williamson v. Nealy,* 119 N. C., 341. We see no valid objection to the probate of the contract. There being no witness to the instrument, and the parties except LeRoy being non-residents, it was proved as prescribed by section 1246 (9) of The Code. All the parties being alive, we can see no good reason why this proof may not be made by LeRoy, a party to the instrument. *Clark v. Hodge,* 116 N. C., 761. We do not find any merit in either of the exceptions in regard to the admission of the contract. His Honor correctly held that the measure of the plaintiff's damage was the difference between the contract price and the value of the land. *Nichols v. Freeman,* 33 N. C., 99; Sedgwick on Damages, sec. 1006; 2 Warville on Vendors, p. 959; Joyce on Damages, sec. 1758. The defendants having sold the land at public auction and received the proceeds are liable for the difference between the contract price and the amount received by them. That the contract

is enforcible and, therefore, that an action for damages for breach thereof may be maintained, is well established. *Rodman v. Robinson,* 134 N. C., 503. There is no error in the judgment against Jacobosky Bros.

Affirmed.

### APPEAL OF DEFENDANT S. H. WEISEL.

Connor, J. The defendant S. H. Weisel insists that he was not a party to the contract when it was executed, and signed it without consideration after the option had expired, and that he is not bound thereby. It will be noted that the option expired April 23, 1903, and the contract was signed by Weisel April 28. As to him it is without any consideration; he promised on April 28 to convey to the plaintiff the land on the 23d of April of the same year, which is an impossibility. We cannot see how it is possible for him to commit a breach of such an agreement. The contract made by Weisel was impossible of performance, and of course there could never be a breach of it. "Physical impossibility means here practical impossibility according to the state of knowledge and of the day, as for example, a promise to go from New York to London in one day, or to discover treasure by magic, or to go around the word in a week." 9 Cyc., 326. "If one promise to do what cannot be done, and the impossibility is not only certain but perfectly obvious to the promisee, as if the promise were to build a common dwelling-house in one day, such a contract must be void for its inherent absurdity." 2 Parsons Cont., 673 (9 Ed.). "An agreement may be impossible of performance at the time it is made, and this in various ways. It may be impossible in itself, that is, the agreement itself may involve a contradiction, as if it contained promises inconsistent with one another, or with the date of the agreement." Pollock on Contracts, 348. "Obvi-

ous and absolute physical impossibility, apparent upon the face of the promise and thus known to the parties, renders the promise void. Thus a charter party executed on the 15th of March covenanting that the ship would proceed from where she then lay on or before the 12th of February, was held void." Beach on Mod. Con., sec. 222.

The execution of the contract was not a ratification of his guardian's agreement and could not be, for the reason that the time within which the guardian had promised to sell was past, and for the further reason that his agreement, being against public policy, was void.

The exception of the defendant Weisel must be sustained and a new trial ordered as to him.

New Trial.