## HICKS v. KENAN.

(Filed October 17, 1905).

MOTION TO AFFIRM.

*Motion to Dismiss Appeal—Assignment of Errors—Exceptions.*

1.  Section 550 of The Code and Rule 27 of this court require an assignment of the errors relied on to be tabulated and inserted in the case on appeal or record, preferably at the end.

2.  Where the exceptions are separately stated and numbered, but are not brought together at the end of the case, a motion by the appellee to affirm will be denied, if the error intended to be assigned is plainly apparent.

ON THE MERITS.

*Contract—Principal and Agent—Personal Liability of Agent.*

1.  Where a contract which was intended to be a satisfaction of all notes, drafts and accounts of plaintiff's creditors, was signed by defendant's intestate "representing A," who did not hold any such claim, but only was an endorser on plaintiff's notes to A, the fact that the intestate's name appears in the body of the contract does not impose a personal liability upon him.

2.  Where an agent acts within the scope of his authority and professes to act in the name and behalf of his principal, he is not personally liable.

3.  Where the question of agency in making a contract arises there is a distinction between instruments under seal and those not under seal. In the former case, the contract must be in the name of the principal and must purport to be his deed. In the latter, the question is always one of intent, and when the meaning is clear, it matters not how it is phrased nor how it is signed.

*E. K. Bryan* for the plaintiff.
*Rountree & Carr* and *Iredell Meares* for the defendant.

MOTION TO AFFIRM.

*Per Curiam:* Plaintiff moved in this court to affirm the judgment upon the ground that defendant had not stated her exceptions nor assigned errors, as directed by Rule 27, of this court. The Code, section 550, required, and it is the law now, that the appellant in his case on appeal should "state separately, in articles numbered, the errors alleged." Rule 27 is to the same effect. Clark's Code, p. 920. It provides that "every appellant shall set out, in the statement of the case served on appeal, his exceptions to the pleadings, rulings and judgment of the court, briefly and clearly stated and numbered. No other exceptions than those set out or filed, and made a part of the case or record, shall be considered by this court," with certain reservations therein specified. The statute and rule are plainly worded and should be easily understood. They require an assignment of the errors relied on to be tabulated and inserted in the case or record, preferably at the end. This is a reasonable requirement, and a usual one in appellate proceedings. Many courts in other jurisdictions prescribe as the penalty for non-observance, dismissal of the appeal. We are not disposed to enforce the rules of this court harshly, but with all the leniency consistent with the prompt and orderly transaction of the business of the court. It was clearly intended that the statute and rule should be observed. Compliance with them will greatly facilitate the hearing and decision of cases upon their real merits. It will be best for counsel, the court and suitors, if due heed is given to the duty of appellants in this respect. This court has more than once called attention to this provision of the law, and has endeavored to impress upon those concerned, the importance of preparing cases in accordance therewith. *Taylor v. Plummer,* 105 N. C., 56; *McKinnon v. Morrison,* 104 N. C., 354; *Wilson v. Wilson,* 125 N. C., 525; *State v. Blankenship,* 117 N. C., 808. Many of the records in this

court show a strict compliance with the rule, and this is sufficient evidence of the fact, not only that it has not escaped the attention of the bar, but that its provisions are well understood. We hope a word to the wise and prudent practitioner will be quite sufficient, and that in the future the transcripts sent to this court will be entirely free from this defect.

In this case the exceptions have been separately stated and numbered, though they are not brought together at the end of the case. While this is not a strict compliance with the statute and rule, the error intended to be assigned is so plainly apparent that we deny the motion, but, at the same time, we have deemed it a fit occasion to again remind members of the bar that there still exists the necessity of preparing cases on appeal in accordance with the simple requirement of the statute, the importance of which has been emphasized by formulating its substance into a rule of this court. ·

We deny the motion, and the case will now be heard upon its merits.

Motion Denied.

## ON THE MERITS.

ACTION by R. W. Hicks against Mary H. Kenan, Executrix of W. R. Kenan, heard by *Judge O. H. Allen* and a jury, at April Term, 1905, of the Superior Court of NEW HANOVER County.

Plaintiff sued defendant to recover $136.25 and interest, a part of the proceeds of the collection of an account due by W. W. Blair to R. W. Hicks, and assigned by the latter to H. C. McQueen, W. R. Kenan and C. A. Healy, that being the amount received by the said Kenan. Plaintiff introduced in evidence the following paper:

EXHIBIT "A."

"WILMINGTON, N. C., November 23, 1901.

*Messrs. H. C. McQueen, W. R. Kenan and C. A. Healy:*

I hereby transfer the account, $595, owing me by W. W. Blair, same to be divided between yourselves, as interests may appear.

R. W. HICKS.

Above amount is correct and approved.

W. W. BLAIR."

Plaintiff contended that the account was assigned as collateral security for a debt owing by Hicks to Kenan, McQueen and Healy, and not as a payment.

Mr. Bryan, a witness for the plaintiff, testified: Some time after the execution of the transfer of Blair's account or due bill, I saw Hicks, Healy, McQueen and Kenan sign the paper which has been offered in evidence, and marked Exhibit "B." In December, 1901, or January, 1902, there was a meeting at Mr. Kenan's office of the Murchison National Bank, W. R. Kenan, C. A. Healy, representing the molasses contracts of Hicks, myself and Hicks, with reference to his indebtedness. Hicks was then indebted to a large amount. Kenan was present and did most of the talking; he was the endorser to the Atlantic National Bank for Hicks. I asked what the creditors demanded of Hicks, and Kenan said they wanted Hicks to execute a mortgage on his store, etc. (Hicks was present). They were threatening Hicks with prosecution. I submitted a proposition which was finally consummated in the paper which I hold in my hand, marked Exhibit "B." After the execution of the paper, I demanded the Blair account of McQueen, which had not been paid at that time. I afterwards met Kenan and made demand on him for his part, and told him that I had been informed that it had been paid up, and he said that he would not turn it over; I then asked him if it

was not put up as collateral security for the debt which Hicks owed him and McQueen and Healy. I called his attention to the Blair paper, and he said that it was, and that he would not turn it over because he understood he was to keep the paper and apply it to the debt. He said, "If you get it, it will be by law suit." He admitted that it was put up as security for the debts referred to in agreement marked Exhibit "B." (To each and every part of the foregoing testimony, defendant objected, the objection was overruled and defendant excepted). Cross-examination. At the time agreement "B" was signed, the paper marked "A" was not mentioned. I did not know of it at that time, and it was not discussed at the time Exhibit "B" was executed. The drafts and notes referred to in Exhibit "B" are the drafts and notes Hicks had given for the molasses, and there is nothing in the agreement about the account owed by Blair. I told Hicks to surrender all claim for his, Hick's, right to an accounting from the Murchison National Bank, Kenan and Healy for the molasses that Hicks had turned over to them as security for his indebtedness to them and let them keep the molasses in full settlement of their indebtedness against Hicks, and I thought they would be satisfied. Neither Hicks nor Kenan, McQueen nor Healy, made mention of the paper "A", until afterwards. Kenan came into it by reason of being an endorser of Hicks at the Atlantic National Bank, for twelve or thirteen thousand dollars, he having paid the note which he was holding. When I talked with Kenan, he got mad and said he had lost more than two thousand dollars by signing the note. Hick's contention is that the two thousand dollars lost by Kenan was settled by agreement "B," but not what he got on the Blair account, which Kenan now owes Hicks. The Blair due bill was not paid until I made demand for its return, but was paid at the time Kenan admitted to me it was put up as security.

Plaintiff introduced the agreement known in the case as Exhibit "B." Defendant objected to its introduction. Objection overruled and defendant excepted.

HICKS *v.* KENAN.

It was provided in the paper, dated February, 1902, which is called in the case Exhibit "B," and is the agreement between Hicks and his creditors, that the latter should keep certain molasses which Hicks had theretofore delivered to them as security for their claims—notes, drafts and accounts—and the creditors should fill certain orders for molasses which Hicks had alreardy taken, and that what was left should be the property of the creditors, and be taken by them in full satisfaction and payment of their said claims, and they should make no further demand upon Hicks, on any claim then existing against him. This agreement was signed as follows: "R. W. Hicks, C. A. Healy, by Cyrus Healy, attorney; W. R. Kenan, representing Atlantic National Bank; H. C. McQueen, President of Murchison National Bank." Plaintiff rested.

At the close of plaintiff's testimony, defendant moved to dismiss and for judgment as in case of nonsuit, under the statute. Motion overruled and defendant excepted. There was no testimony for the defendant. Verdict for plaintiff. Motion for new trial overruled and defendant excepted. Judgment for plaintiff, and appeal by defendant.

*E. K. Bryan* for the plaintiff.
*Rountree & Carr* and *Iredell Meares* for the defendant.

WALKER, J., after stating the facts: The decision of this case must depend very much upon the form of the writing containing the agreement of Mr. Hicks with his creditors, and the mode of its signature by Mr. Kenan. We think that when thus considered, even, if necessary and permissible, in connection with the testimony of Mr. Bryan, it is quite conclusive that the defendant's intestate did not sign the contract for himself as a principal, but for the Atlantic National Bank for whom he stood in the transaction. Mr. Kenan annexed to his signature the words "Representing the Atlantic National

Bank," and it would require extremely strong words in the body of the instrument to control the effect of that form of signature, and we do not think any such words are to be found there. The contract was intended to be a satisfaction of all notes, drafts and accounts, and at that time Mr. Kenan did not hold any claim against Mr. Hicks thus evidenced. He was endorser on Mr. Hick's note to the Atlantic National Bank, and for this reason, we presume, he was in the meeting of creditors to represent the bank, and incidentally to protect his own interests. The fact that his name appears as one of the parties of the second part (Hicks being the party of the first part), can make no difference, and should not impose a liability on him which would not otherwise exist, especially as he was careful to use words, namely, "Representing the Bank," which plainly exclude the idea that he was acting for himself, and as the insertion of his name in the body of the agreement may have been purely accidental. At any rate we will not permit it to outweigh other parts of the instrument, which clearly manifest the intent.

When an agent acts within the scope of his authority, and professes to act in the name and behalf of his principal, he is not personally liable. This is the general and well settled rule. Where the question of agency in making a contract arises, there is a distinction between instruments under seal, and those not under seal, or by parol. In the former case it is held the contract must be in the name of the principal, and must purport to be his deed, and not the deed of the agent. In the latter case, the question is always one of intent, and the court, being untrammeled by any other consideration, is bound to give it effect. As the meaning of the law maker is the law, so the meaning of the contracting parties is the agreement. Words are merely the symbols they employ to manifest their purpose, that it may be carried into execution. If the contract be unsealed and the meaning clear, it matters not how it is phrased, nor how it is signed, whether by the agent

for the principal or with the name of the principal by the agent, or otherwise. *Whitney v. Wyman,* 101 U. S., 392; *Sun Pr. & P. Asso. v. Moore,* 183 U. S., 642. In the last cited case, at page 648, it is said: "The intent developed is alone material, and when that is ascertained, it is conclusive. Where the principal is disclosed and the agent is known to be acting as such, the latter cannot be made personally liable unless he agreed to be so. Now, while Lord is referred to in the body of the first writing as an individual, he signed the agreement 'for the Sun Printing & Publishing Association.' Clearly this was a disclosure of the principal, and an apt manner of expressing an intent to bind such principal." The law as thus stated and applied, has been adopted by this court and commended as having been approved by the best authorities, and as containing in itself a just and true exposition of the principle, which should govern in such cases. *Fowle v. Kerchner,* 87 N. C., 49. *Ruffin, J.,* for the court says in that case: "When the form of the instrument clearly indicates it to be done in behalf of another, the court must give it the construction that it is not the personal contract of the party signing the instrument, and no consideration respecting the plaintiff's remedy against any other party, should prevail with the court to change the contract." *Rice v. Gore,* 22 Pick., 158; *McBreath v. Haldimand,* 1 Term Rep., 172; *Deslandes v. Gregory,* 105 E. C. L. (2 El. & El.), 610; *Lyon v. Williams,* 5 Gray, 557. *Fowle v. Kerchner* is a very strong authority, for, in that case, if the defendants were not liable, then nobody was liable to the plaintiffs on the contract, and besides, the defendants signed the contract in their individual names. See also *Hite v. Goodman,* 21 N. C., 364; *Potts v. Lazarus,* 4 N. C., 180; *Meadows v. Smith,* 34 N. C., 18. The case of *McCall v. Clayton,* 44 N. C., 422, is much like our case and governs it in principle. We are constrained to think this is a case of agency and that the agency is disclosed upon the face of the contract. Such being the case, Mr.

Kenan was not bound by any of its terms. This appears to us to be made perfectly clear, when we examine the paper in connection with the oral testimony introduced. Mr. Kenan was merely endorser of the note of the plaintiff to the bank. He was in that capacity interested, it is true, in having the bank debt paid or adjusted in some way, but there was no reason why he should become personally a party to the paper in order to accomplish this end. If the bank was paid, he was exonerated by operation of law. The bank, after it had received payment in full, could not, of course, recover of him what his principal, Mr. Hicks, did not then owe. The evidence shows that Mr. Kenan had to pay $2,000 on the note, and we do not think it can be successfully shown to have been the intention of the parties that the bank should be paid out of the proceeds derived from the sale of the molasses, and that Mr. Kenan should lose his right to a security he held, for any payment he may have made on the debt to the bank. Mr. Kenan, as we have already said, did not hold any evidence of indebtedness against Mr. Hicks, of the kind described in the contract (Exhibit "B"). If he had paid anything on the note in the bank, his claim against Mr. Hicks was for money paid to his use. It was the intention to discharge the particular indebtedness described, and not any obligation of Mr. Hicks to his surety, which was secured by collateral. The general question as to the construction of such contracts and the liability of a party who has signed in a representative capacity, is fully discussed by *Mr. Justice Connor,* in the recent case of *Leroy v. Jacobosky,* 136 N. C., 443.

It is evident that Mr. Hicks was in very embarrassed circumstances, and was willing to surrender absolutely what he had already turned over to his creditors, provided he obtained a full acquittance from all further liability to them. The construction we have given to the agreement is in full harmony with this scheme, which the evidence shows to have been the one contemplated by the parties. It would not be just to

the surety, if we should hold that he must give up a security held by him for his indemnification, simply because his principal had received property which may have been sufficient to satisfy his note, or to pay whatever sum was then due thereon, if the surety had already incurred liability for, or paid any part of, the debt. It would require the plainest sort of language to convey any such idea, and there is no reason why we should so hold, unless the intention to that effect has been clearly expressed.

So far we have confined ourselves to the nature of the transaction as disclosed by the contract, and to certain phases of the evidence, but it seems from the latter that Mr. Kenan himself thought there was an understanding at the time the contract was made, that he should keep the Blair account, and appply it to the debt, and for this reason he refused to surrender it and added, "If you get it, it will be by law suit." He then said that he had lost more than $2,000 by signing the note of Mr. Hicks to the bank. Besides, the evidence shows that the Blair account was not mentioned when Exhibit "B" was written and signed, and it was not considered in coming to the agreement embodied in that paper.

We think the court erred in overruling the motion to dismiss, even if the evidence be viewed most favorably for the plaintiff, which is required to be done in testing the validity of a motion to nonsuit. The other question, as to the competency of the oral testimony introduced by the plaintiff to show that the account against Blair was assigned as collateral security, need not be considered, as a ruling upon that question is rendered unnecessary by our decision of the case upon its full legal merits in favor of the defendant. It may be well, however, on that point to refer to the cases of *McDowell v. Tate,* 12 N. C., 249; *Knott v. Whitfield,* 99 N. C., 76; *Vestal v. Wicker,* 108 N. C., 21, and *Terry v. Robbins,* 128 N. C., 140, which bear upon the question presented by the exception. The case first cited is very much like ours in its

facts. For the sake of the argument, we have treated the assignment as if it was a collateral security, and not a payment. There was error in the decision of the court, as above indicated.

Error.