J. S. BASNIGHT v. SOUTHERN JOBBING COMPANY ET AL.

(Filed 30 September, 1908.)

1. Contracts—Fraud or Mistake, How Taken Advantage of—Collateral Attack in Action Upon.

Parol evidence is admissible to vary the terms of a written instrument, only for fraud or mistake, and then the contract must be reformed, upon proper allegations, in an independent action, or by way of affirmative defense, properly pleaded, in the same action. It cannot be changed by a collateral attack in a suit upon the instrument itself.

2. Corporations—Contracts, Written—Principal and Surety—Sureties Signing as Officers—Parol Evidence.

A written contract, expressed in clear and unambiguous terms, which is set up in the complaint and admitted in the answer, and which was made by a corporation and its stockholders, the latter being named as sureties, with a purchaser of stock, stating that upon demand one year from date the corporation will pay a sum certain for the stock thus bought, should he (the purchaser) so elect, cannot be varied by parol evidence so as to show that some of the stockholders signed only as officers of the company and not as sureties, though their official signature appeared upon the instrument. (*Typewriter Co. v. Hardware Co.*, 143 N. C., 97, and other like cases, cited and distinguished.)

3. Same—Form of Signature—Effect.

In the body of a contract made by a corporation, guaranteeing certain conditions to a purchaser of shares of its own certificates of stock, it was stated that the corporation had signed as

principal and its stockholders as sureties. Some of the stock-
holders, who were officers, signed the instrument, using their
official designation: *Held*, (1) the form of the signature was un-
important and could not vary the clear intent expressed in the
body of the instrument; (2) the intent of the sureties to bind
themselves personally was not changed by the form of their
signatures, for such a change would make the corporation its
own surety, amounting in effect to no surety, as the debts of
the corporation would have to be first paid.

ACTION heard before *W. R. Allen, J.,* and a jury, at
February Term, 1908, of CRAVEN.

This is an action by the plaintiff against the Southern
Jobbing Company, J. J. Baxter and W. J. O'Neal, to recover
the sum of $5,000, which was paid by him for fifty shares
of the stock of the jobbing company, under an agreement
between him and the said parties, which is as follows:

"This agreement, made and entered into this 24 May,
1905, by and between the Southern Jobbing Company, a
corporation in the State of North Carolina, party of the
first part, and Jesse S. Basnight, party of the second part,
and J. J. Baxter, W. G. O'Neal, E. F. O'Neal and David
Kramer, stockholders of the Southern Jobbing Company, all
of New Bern, N. C., parties of the third part, witnesseth:

"That the said parties of the first part and the third part
do represent to the party of the second part that the ex-
hibit marked 'A,' hereto attached, is a true and correct
inventory and statement of all the liabilities of the party
of the first part outstanding.

"That the total amount of capital stock issued by the said
party of the first part is the sum of $5,000 par value, and
that for and in lieu of the dividends earned up to this time
the corporation will issue stock of the value of $1,200 and
will apportion $300 of stock to David Kramer; and do
further represent that there is now due the said corporation
debts as shown in exhibit 'B,' a copy of which is hereto
attached; and do further represent that the statement hereto

attached, marked 'Exhibit C,' is a true and correct statement of the financial affairs of said corporation.

"Upon which representation the said Jesse S. Basnight has agreed, and does hereby agree, and does hereby subscribe to fifty shares of the stock in the said Southern Jobbing Company, at par, to-wit, $5,000, upon the following terms and conditions: (1) The parties of the third part do agree to execute proxies, irrevocable for one year, to the said Jesse S. Basnight to vote their stock at any and all meetings of the company. (2) That the said Jesse S. Basnight shall be elected, for a term of one year, treasurer of the Southern Jobbing Company and general manager thereof, at the salary of $1,250 per year, to be paid in monthly or quarterly installments. (3) That the said Jesse S. Basnight shall have the option, at the expiration of one year from date, of selling the said stock, with all accrued dividends and profits, to the said Southern Jobbing Company at the price of $5,000, without interest or profit added, or he shall have the option to keep and hold the said stock, together with all profits and dividends declared or accumulated, as if the said purchase had been absolute and unconditional.

"And the said party of the first part, as principal, and the said parties of the third part, as sureties, do hereby contract and agree with the said party of the second part: (1) That upon his demand, one year from date, the party of the first part will pay to Jesse S. Basnight the sum of $5,000 for his said fifty shares of stock. (2) That they will warrant and guarantee that the said statements and exhibits 'A,' 'B' and 'C' are true and correct and do contain a full statement of what they purport to show. (3) That they will guarantee the payment and collection of all debts due the party of the first part, as shown by 'Exhibit B,' aforesaid, on or before twelve months from date, together with interest thereon from and after maturity. (4) That the salary and proxy above shall be paid and executed as there stated.

"And the said party of the second part does hereby contract and agree that he will enter upon his duties as treasurer and general manager as aforesaid, and will devote thereto such part of his time as shall be necessary and beneficial for the interest of the said corporation.

"In testimoney whereof, the said parties have hereunto subscribed their names and affixed their seals this 24 May, 1905.

| | |
|---|---|
| "SOUTHERN JOBBING COMPANY, | |
| "Per J. J. BAXTER, *President.* | [Seal.] |
| "J. J. BAXTER, *President.* | [Seal.] |
| "W. G. O'NEAL, *Secretary.* | [Seal.] |
| "D. KRAMER, *Vice-Pres.* | [Seal.] |
| "E. F. O'NEAL. | [Seal.] |
| "J. S. BASNIGHT." | [Seal.] |

The contract is set out in the complaint. In their answers J. J. Baxter and W. G. O'Neal admit that they executed the contract, but aver that it was not executed by them as sureties, as it was agreed at the time they signed it that they should not be liable individually as sureties, and they affixed their official titles to their names and intended to sign it merely as officers of the corporation. Without objection by the defendants, the court submitted issues to the jury, which, with the answers thereto, are as follows:

1. "Was it the agreement between the parties, at the time of signing the contract in this action, that the defendant Baxter would not be personally liable?" Answer: "Yes."

2. "Was it the agreement between the parties, at the time of signing the contract in this action, that the defendant O'Neal would not be personally liable?" Answer: "Yes."

The defendant J. J. Baxter testified: "The plaintiff came to me with a written paper and asked me to sign the same. I told him I would not be individually liable. I first signed the paper for the Southern Jobbing Company, and plaintiff

asked me to sign individually also. I told him I would not sign individually, but would sign my name as president of the company, and would agree for my stock to be liable to him for the repayment of his money. I signed the paper 'J. J. Baxter, President.' Plaintiff asked me not to add 'president.' I said: 'Do you take me for a fool?' He and I then agreed that I should not be personally liable, but my stock would only be liable to him in addition to all of the property of the concern, which was turned over to him as general manager." W. G. O'Neal testified to the same effect.

The plaintiff testified that there was no such agreement, but that the defendants Baxter and O'Neal were to be liable individually as sureties, according to the terms of the contract; that before the contract was executed he had several verbal conversations with the officers of the company and told them to put their proposition in writing, whereupon they delivered to him a paper, in the handwriting of Baxter, of which the following is a copy:

"We, the stockholders of the Southern Jobbing Company, guarantee to J. S. Basnight a profit of 25 per cent. for one year on an investment of $5,000 in our company. May 22, 1905.                                    "J. J. BAXTER,
                                                     *President.*
                                            "W. G. O'NEAL,
                          *Secretary and Vice-President.*"

In reply to that paper he handed them a paper, of which the following is a copy:

                                    "May 22nd, 1905.
*"To Southern Jobbing Company.*

"GENTLEMEN:—In lieu of your proposition of to-day, I am writing. I make you the following proposition: (1) I will take $5,000 worth of stock at par in your company, reserving the option to return the stock to the company at the end of one year, without interest or dividends, the

company and present stockholders guaranteeing to refund the money at my option at that time. (2) The company to pay me a salary of $1,250 for the one year. (3) The present stockholders are to guarantee the collecting of all bills now outstanding, and also that the statements made include all liabilities of the company. (4) If I decide at the end of the year to keep my stock, it is to stand thereafter on an equal footing with all other stock. (5) You are to elect me general manager. and treasurer for one year. (6) You are to give me proxies of others, so I may have a majority vote at stockholders' meeting for one year.

"Yours respectfully,        J. S. BASNIGHT."

J. J. Baxter wrote an acceptance of his proposition on the paper, which is as follows:

"The above proposition accepted by the Southern Jobbing Company.                                 J. J. BAXTER,
                                                *President.*"

He further testified: "I had refused to make a verbal agreement and thought it best, if we made any trade at all, that it should be reduced to writing. I then carried the papers containing the proposition, the counter-proposition and acceptance to my attorney, W. D. McIver, and requested him to draw up the contract accordingly. He had the contract drawn up, with several copies; one was given to me, one to J. J. Baxter at his store, and another to O'Neal at the office of the Southern Jobbing Company, and afterwards the contract was signed."

The testimony of J. J. Baxter and W. J. O'Neal was objected to by the plaintiff in apt time. The objection was overruled and the testimony admitted.

The plaintiff moved for judgment, notwithstanding the verdict. After consideration of the motion, the court set the verdict aside and entered judgment for the plaintiff, upon the ground that under the pleadings it was not competent

to introduce oral evidence to relieve the defendants J. J. Baxter and W. G. O'Neal from individual liability, and that as matter of law each was liable on the contract as surety. The defendants Baxter and O'Neal excepted and appealed.

*W. D. McIver* and *W. W. Clark* for plaintiff.
*D. L. Ward* and *Simmons, Ward & Allen* for defendants.

WALKER, J., after stating the case: The decision of this case must depend upon what appears in the pleadings. The plaintiff alleges the execution of the contract sued on, which is admitted by the defendants in their answer. The terms of that contract are plain and unambiguous. The defendants explicitly agree therein with the plaintiff that they will become sureties of the jobbing company for the strict performance of the obligation assumed by the company, which is that, upon demand, and one year from the date of the contract, the jobbing company will pay to the plaintiff the sum of $5,000 for his fifty shares of stock. There can be no doubt as to the correct meaning of this language. It is an express and unconditional promise, in their individual character, that the money shall be paid at the appointed time. In their answers the defendants deny this allegation and aver that they were not to be liable personally or individually. This is a square contradiction of the terms of the contract and of the obligation to pay the money themselves, which they assumed by the execution of the instrument. The issues were framed and submitted to the jury in exact accordance with the averments in the pleadings, and oral evidence which was offered by the defendants to support the affirmative of those issues was admitted by the court. The evidence was incompetent, and the ruling of the court in setting aside the verdict and giving judgment for the plaintiff was clearly right. There is no rule better settled in the law than that oral evidence is not admissible to vary or contradict a written instrument, unless there has been fraud or mistake, in which

case it must be reformed by an independent action or by way of affirmative defense in the same action. It cannot be changed by a collateral attack in a suit upon the instrument itself. *Etheridge v. Palin,* 72 N. C., 213; *Ray v. Blackwell,* 94 N. C., 10; *Terry v. Railroad,* 91 N. C., 236; *Moffitt v. Maness,* 102 N. C., 457; *Bank v. Moore,* 138 N. C., 529; *Mudge v. Varner,* 146 N. C., 147. In *Meekins v. Newberry,* 101 N. C., 18, it is said to be "a settled rule that when the parties to a contract reduce the same to writing, in the absence of fraud or mutual mistake, properly alleged, parol evidence cannot be heard to alter, contradict or modify it." Evidence, under this rule of exclusion, is never admitted, if the wording is clear or if the evidence offered is in direct contradiction of the intrinsic meaning of the language of the contract. Browne on Parol Evidence, p. 199, secs. 55-56; *Gilbert v. Moline Plow Co.,* 119 U. S., 491; *The Delaware,* 14 Wall., 579; *Kean v. Davis,* 21 N. J. L., 683. If the terms of the contract clearly and sufficiently determine the intent and meaning of the parties, the form of the signature is not important and will not bring the case within any exception to the rule. *Fowle v. Kerchner,* 87 N. C., 49; *Hicks v. Kenan,* 139 N. C., 337.

There are decisions of this and other courts to the effect that it may be shown by parol evidence that an obligation was not to be assumed except upon a certain contingency, or that the liability should be discharged in a certain way, these being stipulations intended to be a part of the contract, but not reduced to writing by the parties. *Braswell v. Pope,* 82 N. C., 57; *Penniman v. Alexander,* 111 N. C., 427 (affirmed in 115 N. C., 555); *Kerchner v. McRae,* 80 N. C., 219; *Evans v. Freeman,* 142 N. C., 61; *Typewriter Co. v. Hardware Co.,* 143 N. C., 97. Other cases are cited in *Braswell v. Pope, supra,* and *Evans v. Freeman, supra.*

If the stock only was to be "liable" for the debt, we do not see why the defendants affixed their official titles to the

signatures.    This does not indicate, in the least, that they were limiting their liability to the stock held by them.    If it was intended that the stock should be applied to the payment of the debt, and that there should be no personal liability, the company would be its own surety, and, besides, the plaintiff would have no security at all for his debt against the company, as the debt would in law have to be paid before any of the assets of the corporation could be used to redeem its stock.    If the stock was a security in name, it would be valueless as a security in fact.    If the parties signed, as they did, for the purpose of representing the corporation, the same result would follow, but they do not profess to have executed the contract for the company.

We find no error in the ruling of the court.

No Error.