IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-944

 Filed: 18 August 2020

Wilson County No. 19 CRS 802

STATE OF NORTH CAROLINA

 v.

TABITHA RENEE JENKINS, Defendant.

 Appeal by Defendant from judgment entered 13 May 2019 by Judge Walter H.

Godwin, Jr. in Wilson County Superior Court. Heard in the Court of Appeals 3 March

2020.

 Attorney General Joshua H. Stein, by Assistant Attorney General Rana M.
 Badwan, for the State.

 Edward Eldred for defendant-appellant.

 MURPHY, Judge.

 Even when objected to, a defendant’s failure to indicate service on the State in

violation of N.C. R. App. P. 4(a)(2) does not require dismissal of the appeal as it does

not deprive the court of jurisdiction. Despite Defendant’s failure to indicate service

on the State with notice of appeal, we have jurisdiction and may reach the merits.

 A defendant’s waiver of counsel must comply with N.C.G.S. § 15A-1242 and be

knowing, intelligent, and voluntary. Where a trial court informs a defendant of the

right of assistance of counsel and ensures the defendant understands the

consequences of a decision to proceed pro se, with a supporting written waiver of
 STATE V. JENKINS

 Opinion of the Court

counsel, the waiver of counsel is considered knowing, intelligent, and voluntary.

Where a trial court’s inquiry into a defendant’s waiver of counsel is substantially

similar to the inquiry in Whitfield, we must uphold the waiver. State v. Whitfield,

170 N.C. App. 618, 621, 613 S.E.2d 289, 291 (2005). Here, we find the trial court’s

inquiry to be substantially similar to the inquiry in Whitfield, and therefore it

satisfies the statutory mandate. We affirm.

 BACKGROUND

 On 21 February 2017, Defendant, Tabitha Jenkins, pleaded guilty to second-

degree kidnapping and simple assault. The trial court entered a consolidated

judgment imposing a suspended sentence of 23 to 40 months and placing Defendant

on supervised probation for 36 months. On 15 March 2019, a probation officer filed

a violation report alleging Defendant absconded “by willfully avoiding supervision or

by willfully making the supervisee’s whereabouts unknown to the supervising

probation officer.”

 On 13 May 2019, Defendant appeared for her probation revocation hearing at

which time she had the following exchange with the trial court:

 [STATE]: Tabitha Jenkins. She needs to be
 advised, Your Honor.

 THE COURT: All right, Miss Jenkins, you can come
 around please, ma’am.

 Miss Jenkins, you’re up here for an
 alleged probation violation. If it’s

 -2-
 STATE V. JENKINS

 Opinion of the Court

 found that your violation is a willful
 one, you could be required to serve the
 suspended sentence that was
 heretofore given to you which is not less
 than 23, no more than 40 months in the
 Department of Corrections. You got
 the right to remain silent. Anything
 you say can and will be used against
 you. You got the right to represent
 yourself, hire an attorney of your own
 choosing and if you feel you cannot hire
 an attorney, I’ll review an affidavit to
 determine if you so qualify.

 What’s your desire about a lawyer?

 DEFENDANT: I guess I can for myself.

 THE COURT: All right. Sign the waiver please,
 ma’am.

 (Defendant executed waiver.)

 Defendant executed a written waiver of counsel form, AOC-CR-227, and the

trial court then heard testimony regarding the probation violation. Defendant

admitted violating her probation and explained that she was unable to make

appointments with the probation officer because of “problems going on at home . . . .”

The trial court found Defendant had violated the conditions of her probation willfully

and without valid excuse. The trial court revoked Defendant’s probation and

activated her underlying sentence on the basis that she absconded supervision.

 Defendant, pro se, timely filed a handwritten note indicating a desire to appeal,

which did not include proof of service upon the State. The State argues the appeal is

 -3-
 STATE V. JENKINS

 Opinion of the Court

subject to dismissal for failure to comply with the requirements for written notice of

appeal under Rule 4(a)(2). N.C. R. App. P. 4 (2019). Defendant argues a violation of

“[Rule 4(a)(2)] does not deprive the Court of jurisdiction,” and does not warrant

dismissal of the appeal. N.C. R. App. P. 4(a)(2) (2019).

 As to the merits, Defendant argues that her exchange with the trial court was

insufficient to constitute a knowing, voluntary, intelligent waiver of her right to

counsel and asserts that she did not understand or appreciate the consequences of

waiving counsel or the nature of the charges and proceedings, as required by N.C.G.S.

§ 15A-1242. The State argues the exchange was sufficient and notes the similarity

to State v. Whitfield where we found a similar exchange to be sufficient under

N.C.G.S. § 15A-1242. Whitfield, 170 N.C. App. at 622, 613 S.E.2d at 292.

 ANALYSIS

 A. Jurisdiction

 “‘[R]ules of procedure are necessary . . . in order to enable the courts properly

to discharge their dut[y]’ of resolving disputes.” Dogwood Dev. & Mgmt. Co. v. White

Oak Transp. Co., Inc., 362 N.C. 191, 193, 657 S.E.2d 361, 362 (2008) (quoting Pruitt

v. Wood, 199 N.C. 788, 790, 156 S.E. 126, 127 (1930)). “Compliance with the rules,

therefore, is mandatory.” Id. at 194, 657 S.E.2d at 362. However, “noncompliance

with the appellate rules does not, ipso facto, mandate dismissal of an appeal.

Whether and how a court may excuse noncompliance with the rules depends on the

 -4-
 STATE V. JENKINS

 Opinion of the Court

nature of the default.” Id. at 194, 657 S.E.2d at 363 (internal citation omitted).

“[D]efault under the appellate rules arises primarily from the existence of one or more

of the following circumstances: (1) waiver occurring in the trial court; (2) defects in

appellate jurisdiction; and (3) violation of nonjurisdictional requirements.” Id.

(emphasis added).

 “[A] party’s failure to comply with nonjurisdictional rule requirements

normally should not lead to dismissal of the appeal.” Id. at 198-99, 657 S.E.2d at 365-

66; see, e.g., Hicks v. Kenan, 139 N.C. 337, 338, 51 S.E. 941, 941 (1905) (observing our

Supreme Court’s preference to hear merits of the appeal rather than dismiss for

noncompliance with the rules). Only in the most egregious instances of

nonjurisdictional default will dismissal of the appeal be appropriate, as “every

violation of the rules does not require dismissal of the appeal or the issue.” State v.

Hart, 361 N.C. 309, 311, 644 S.E.2d 201, 202 (2007).

 In determining whether a party’s noncompliance with the
 appellate rules rises to the level of a substantial failure or
 gross violation, the court may consider, among other
 factors, whether and to what extent the noncompliance
 impairs the court’s task of review and whether and to what
 extent review on the merits would frustrate the adversarial
 process. . . . [W]hen a party fails to comply with one or
 more nonjurisdictional appellate rules, the court should
 first determine whether the noncompliance is substantial
 or gross under Rules 25 and 34. If it so concludes, it should
 then determine which, if any, sanction under Rule 34(b)
 should be imposed. Finally, if the court concludes that
 dismissal is the appropriate sanction, it may then consider

 -5-
 STATE V. JENKINS

 Opinion of the Court

 whether the circumstances of the case justify invoking Rule
 2 to reach the merits of the appeal.

Dogwood, 362 N.C. at 200-01, 657 S.E.2d at 366-67.

 To prevent manifest injustice to a party . . . either court of
 the appellate division may . . . suspend or vary the
 requirements or provisions of any of these rules in a case
 pending before it upon application of a party or upon its
 own initiative, and may order proceedings in accordance
 with its directions.

N.C. R. App. P. 2 (2019).

 The State contends that “Defendant’s handwritten note does [sic] comply with

the requirements for written notice of appeal under Rule 4. The appeal is subject to

dismissal on this basis.” The State relies on State v. McCoy, which dismissed “[the]

defendant’s appeal for failure to give notice of appeal within fourteen days from the

entry of the order holding him in contempt as required by Rule 4(a)(2)[.]” 171 N.C.

App. 636, 637, 615 S.E.2d 319, 320 (2005). Here, unlike McCoy, Defendant’s notice

of appeal was timely, but failed to include proof of service.

 Defendant relies on State v. Golder to assert that lack of service on the State,

while in violation of Rule 4(a)(2), does not deprive us of jurisdiction. In Golder, we

held that “the State waived the required service of [the d]efendant’s notice by

participating in [the] appeal without objection.” State v. Golder, 257 N.C. App. 803,

806, 809 S.E.2d 502, 505 (2018) (emphasis added), aff’d as modified by 374 N.C. 238,

839 S.E.2d 782 (2020). Here, the State objected and requests dismissal. However,

“[i]t is the filing of the notice of appeal that confers jurisdiction upon this Court, not

 -6-
 STATE V. JENKINS

 Opinion of the Court

the service of the notice of appeal.” Id. at 804, 809 S.E.2d at 504 (citing Lee v. Winget

Rd., LLC, 204 N.C. App. 96, 100, 693 S.E.2d 684, 688 (2010)).

 In Lee v. Winget Rd., LLC, we addressed a Rule 31 violation where appellees

argued for dismissal of the appeal because appellants failed to serve the non-

appealing plaintiffs and the previously dismissed defendants.

 As plaintiff-appellants have failed to comply with Rule 3,
 we must now consider whether the appeal must be
 dismissed pursuant to [Dogwood]. If the failure to comply
 with Rule 3 created a jurisdictional default[,] we would be
 required to dismiss the appeal. In fact, Dogwood noted lack
 of notice of appeal in the record or failure to give timely
 notice of appeal as examples of jurisdictional defects.
 However, Dogwood did not address the situation we have
 here, where a notice of appeal is properly and timely filed,
 but not served upon all parties. Pursuant to Hale . . . we
 find that this violation of Rule 3 is a nonjurisdictional
 defect.

 Dogwood states that a nonjurisdictional failure to comply
 with appellate rules normally should not lead to dismissal
 of the appeal. Neither dismissal nor other sanctions under
 North Carolina Rules of Appellate Procedure 25 or 34
 should be considered unless the noncompliance is a
 substantial failure to comply with the Rules or a gross
 violation of the Rules. This Court is required to make a
 fact-specific inquiry into the particular circumstances of
 each case mindful of the need to enforce the rules as
 uniformly as possible. Dismissal is appropriate only for the
 most egregious instances of nonjurisdictional default. To
 determine the severity of the rule violation, this Court is to
 consider: (1) whether and to what extent the
 noncompliance impairs the court’s task of review, (2)

 1 Rule 3 is the civil equivalent to Rule 4, and the rationale in Lee is applicable to our criminal
jurisprudence as well. See Golder, 257 N.C. App. at 804, 809 S.E.2d at 504 (applying Lee to a Rule 4
situation); see also N.C. R. App. P. 3 (2019); N.C. R. App. P. 4 (2019).

 -7-
 STATE V. JENKINS

 Opinion of the Court

 whether and to what extent review on the merits would
 frustrate the adversarial process, and (3) the court may
 also consider the number of rules violated.

Lee v. Winget Rd., LLC, 204 N.C. App. 96, 102, 693 S.E.2d 684, 689-90 (2010)

(emphasis omitted) (citations omitted) (internal marks omitted) (internal alterations

omitted). In Lee, the noncompliance with Rule 3 impaired our review, and we held

“review on the merits would frustrate the adversarial process[,] . . .[b]ecause two of

the parties to [that] case were never informed of the fact that there was an appeal

which affect[ed] their interests, [and we] ha[d] no way of knowing the positions [those]

parties would have taken in [that] appeal.” Id. at 102-03, 693 S.E.2d at 690.

 Applying Lee and Golder, Defendant’s failure to indicate service on the State

with notice of appeal is a nonjurisdictional defect in violation of Rule 4(a)(2). Unlike

in Lee, our review is not impaired by Defendant’s noncompliance with Rule 4(a)(2).

“A notice of appeal is intended to let all parties to a case know that an appeal has

been filed by at least one party.” Lee, 204 N.C. App. at 102-03, 693 S.E.2d at 690.

Here, the State was informed of the appeal and was able to timely respond. We know

the position of both parties on appeal, and Defendant’s violation of Rule 4(a)(2) has

not frustrated the adversarial process.

 Defendant’s failure to indicate service of notice of appeal on the State is a

nonjurisdictional defect, and it is neither substantial nor gross under Rules 25 and

34. We proceed to the merits.

 B. Waiver of Counsel

 -8-
 STATE V. JENKINS

 Opinion of the Court

 “Prior cases addressing waiver of counsel under N.C.[G.S.] § 15A-1242 have

not clearly stated a standard of review, but they do, as a practical matter, review the

issue de novo.” State v. Watlington, 216 N.C. App. 388, 393-94, 716 S.E.2d 671, 675

(2011).

 A defendant “is entitled to be represented by counsel” during a probation

revocation hearing. N.C.G.S. § 15A-1345(e) (2019). “Implicit in [a] defendant’s

constitutional right to counsel is the right to refuse the assistance of counsel” and

proceed pro se. State v. Gerald, 304 N.C. 511, 516, 284 S.E.2d 312, 316 (1981).

 A defendant may be permitted . . . to proceed in the trial of
 his case without the assistance of counsel only after the
 trial judge makes thorough inquiry and is satisfied that the
 defendant: (1) Has been clearly advised of his right to the
 assistance of counsel, including his right to the assignment
 of counsel when he is so entitled; (2) Understands and
 appreciates the consequences of this decision; and (3)
 Comprehends the nature of the charges and proceedings
 and the range of permissible punishments.

N.C.G.S. § 15A-1242 (2019). “The provisions of N.C.[G.S.] § 15A-1242 are mandatory

where the defendant requests to proceed pro se.” State v. Evans, 153 N.C. App. 313,

315, 569 S.E.2d 673, 675 (2002). Before a defendant in a probation revocation hearing

is allowed to represent herself, the trial court must comply with the requirements of

N.C.G.S. § 15A-1242. See Id. at 316, 569 S.E.2d at 675 (holding the trial court failed

to determine whether the defendant’s waiver of counsel was knowing, intelligent, and

 -9-
 STATE V. JENKINS

 Opinion of the Court

voluntary by omitting the second and third inquiries required by N.C.G.S. § 15A-1242

at a probation revocation hearing).

 A written waiver is important evidence to show a defendant wishes to act as

her own attorney. “When a defendant executes a written waiver which is in turn

certified by the trial court, the waiver of counsel will be presumed to have been

knowing, intelligent, and voluntary, unless the rest of the record indicates otherwise.”

State v. Warren, 82 N.C. App. 84, 89, 345 S.E.2d 437, 441 (1986). However, “[a]

written waiver is something in addition to the requirements of N.C.[G.S.] § 15A-1242,

not an alternative to it.” Evans, 153 N.C. App. at 315, 569 S.E.2d at 675 (internal

marks omitted).

 Defendant argues it was not clear her waiver was “intelligent” and the trial

court’s inquiry “did not ensure that [she] understood and appreciated ‘the

consequences’ of a decision to proceed pro se.” Defendant further argues “[n]o part of

the trial court’s inquiry is aimed at the inquiry’s second prong.” Finally, Defendant

argues she did not understand the nature of the proceedings.

 The State argues Whitfield is controlling, where the defendant argued the trial

court failed to comply with N.C.G.S. § 15A-1242 regarding whether the waiver of

counsel was knowing, intelligent, and voluntary. Whitfield, 170 N.C. App. at 621,

613 S.E.2d at 291. In Whitfield, we found the following inquiry sufficient:

 - 10 -
 STATE V. JENKINS

 Opinion of the Court

 THE COURT: All right. Ms. Whitfield, do you
 understand that you have possibly 11
 to 15 months hanging over your head?

 DEFENDANT: Yes, ma’am.

 THE COURT: You understand that?

 DEFENDANT: Yes, ma’am.

 THE COURT: If your probation is revoked, you may
 very well have your sentence activated,
 have to serve that time. You’re entitled
 to have an attorney to represent you.
 Are you going to hire an attorney to
 represent you, represent yourself, or
 ask for a court appointed attorney[?]
 Of those three choices, which choice do
 you make?

 DEFENDANT: Represent myself.

 THE COURT: Put your left hand on the Bible and
 raise your right hand.

 (The Defendant was sworn by the Court)

 THE COURT: That is what you want to do, so help
 you God?

 DEFENDANT: Yes, ma’am.

Id. We held the trial court, and the preceding inquiry, satisfied all three

requirements as set forth in N.C.G.S. § 15A-1242.

 [The trial court] informed [the] defendant of the right of
 assistance of counsel, including the right to a court-
 appointed attorney if [the] defendant was entitled to one.
 The trial [court] also made sure that [the] defendant

 - 11 -
 STATE V. JENKINS

 Opinion of the Court

 understood that her probation could be revoked, that her
 sentences could be activated, and that she could serve
 eleven to fifteen months in prison. Cognizant of these facts,
 [the] defendant verbally gave a knowing, intelligent, and
 voluntary waiver of her right to counsel. Later, [the]
 defendant signed a document indicating that she waived
 her right to counsel and wanted to appear on her own
 behalf. Therefore, we have no doubt that [the] defendant
 intended to and did in fact waive her right to counsel.

Id.

 Based on our prior holding in Whitfield, where we found a similar inquiry

adequate under N.C.G.S § 15A-1242, here we hold the inquiry of Defendant to satisfy

the statutory mandate.

 First, the trial court informed Defendant of her right to assistance of counsel,

including the right to a court-appointed attorney if entitled to one by stating, “[y]ou

got the right to represent yourself, hire an attorney of your own choosing and if you

feel you cannot hire an attorney, I’ll review an affidavit to determine if you so qualify.”

The trial court in Whitfield informed the defendant, “[y]ou’re entitled to have an

attorney to represent you. Are you going to hire an attorney to represent you,

represent yourself, or ask for a court appointed attorney[?] Of those three choices,

which choice do you make?” Whitfield, 170 N.C. App. at 621, 613 S.E.2d at 291. Here,

the content of the trial court’s statement is substantially similar to the trial court’s

statement in Whitfield and is therefore sufficient to meet the first requirement of

N.C.G.S. § 15A-1242.

 - 12 -
 STATE V. JENKINS

 Opinion of the Court

 Second, the trial court ensured Defendant understood her probation could be

revoked, her sentence could be activated, and she could serve an active sentence. The

trial court stated, “you’re up here for an alleged probation violation. If it’s found that

your violation is a willful one, you could be required to serve the suspended sentence

that was heretofore given to you which is not less than 23, no more than 40 months

in the Department of Corrections.” The trial court in Whitfield stated, “[a]ll right,

Ms. Whitfield, do you understand that you have possibly 11 to 15 months hanging

over your head? . . . You understand that?” Id. The defendant responded, “[y]es

ma’am” to each question. Id. This inquiry was sufficient to ensure that the defendant

understood the consequences of her decision. Id. The inquiry conducted here is just

as clear as the inquiry in Whitfield. The trial court clearly stated why Defendant was

in court, and the possible sentence length if it was found that Defendant had in fact

violated her probation. Not only did Defendant choose to represent herself after

hearing the range of her potential sentence should the probation be revoked,

Defendant also completed the written waiver of counsel form.

 Finally, we hold that Defendant comprehended the nature of the charges,

proceedings, and the range of permissible punishments. The trial court in Whitfield

held that, “[c]ognizant of [the] facts, [the] defendant verbally gave a knowing,

intelligent, and voluntary waiver of her right to counsel.” Id. On appeal, Whitfield

argued that “she was confused about her right to counsel,” as she raised questions

 - 13 -
 STATE V. JENKINS

 Opinion of the Court

“[w]hen the prosecutor asked [her] to admit or deny the charges.” Id. However, the

court found that since “[the] defendant’s statement came after she waived her right

to counsel verbally[] . . . [the] defendant was aware of the consequences of

representing herself and made her decision without hesitation.” Id. at 622, 613

S.E.2d at 291-92.

 Here, when presented with the information about her sentence and the

potential length of that sentence, as well as her right to counsel, Defendant was

asked, “[w]hat’s your desire about a lawyer?” Defendant responded, “I guess I can for

myself[,]” and executed the written waiver of counsel form. Defendant answered all

of the trial court’s questions clearly and without hesitation, even though she had been

informed that she had “the right to remain silent.” Defendant was aware of the

charges, proceedings, and the range of permissible punishments, just like the

defendant in Whitfield. Defendant then verbally gave a knowing, intelligent, and

voluntary waiver of her right to counsel. Defendant expressed her comprehension of

the nature of the charges, proceedings, and the range of permissible punishments

when she chose to waive her right to counsel. The trial court conducted an adequate

inquiry and Defendant’s waiver of counsel was knowing, intelligent, and voluntary

under N.C.G.S. § 15A-1242.

 CONCLUSION

 - 14 -
 STATE V. JENKINS

 Opinion of the Court

 Defendant’s waiver of counsel was knowing, intelligent, and voluntary, and the

trial court did not err by allowing Defendant to proceed pro se.

 NO ERROR.

 Judges BRYANT and STROUD concur.

 - 15 -