[Civ. No. 6298.   Fourth Dist.   Nov. 18, 1960.]

WILLIAM H. TOLSON et al., Appellants, v. CHARLES A. GRISET et al., Respondents.

Heinly, Heinly & Tarr and Dale H. Heinly for Appellants.

Charles D. Swanner and John Neil Stanley for Respondents.

GRIFFIN, P. J.—Plaintiffs-appellants, licensed real estate brokers, brought this action against defendants-respondents Charles A. Griset and wife, an elderly couple, who own 40 acres of bean land in Orange County as joint tenants, for a real estate commission of $7,000 upon a written listing of that property. It was dated March 4, 1955, and signed only by defendant husband. A nonsuit was granted as to defendant wife.

After hearing the evidence, the court found that at the time the husband executed said listing and agreement with plaintiffs, he stated to the plaintiffs that said real property was held jointly between said defendant and his wife and that her signature and consent to the sale of said property was necessary and his listing the property for sale was contingent upon her signing an agreement with the plaintiffs for the sale of said property; that she did not sign the listing and at all times refused to execute it or to agree to sell the property; and that her agreement to sell said real property was a condition precedent to the taking effect of said contract and listing between plaintiffs and defendant Charles A. Griset. On April 4, 1955, an escrow for the consummation of the purchase of the property was opened by the purchaser, unbeknown to either defendant, and a deposit of $5,000 was made therein. Both Mr. and Mrs. Griset refused to sign the escrow instructions or proceed with the sale. The court then further found certain peculiar facts in reference to the opening of this escrow. April 4 was the last day for the exclusive agreement to be effective. It was on that day that plaintiffs opened the escrow and deposited the check. The escrow was opened in another county many miles distant from the place where the real property was located and where the defendants reside. In the late afternoon of that day, one of the attorneys for plaintiffs telephoned Mrs. Griset that a sale had been made to which she replied that she had not agreed to make any sale of the real property and that she would refuse to go through with it. Accordingly the court found that plaintiffs did not perform said listing agreement in full in communicating to defendant Charles A. Griset an offer which they had received within the time specified in said listing agreement. The court then found that the listing did not constitute a contract between the plaintiffs and the defendant Charles A. Griset, in

that the taking effect of said contract depended upon the condition precedent that the defendant's wife must agree to said listing and sale and refused judgment for any commission.

It is plaintiffs' argument that the evidence does not support the court's finding that performance by Mr. Griset under the listing agreement was contingent upon or subject to any condition precedent relating to signature and agreement to the listing or sale on the part of Mrs. Griset, and accordingly plaintiffs should have recovered from defendant Mr. Griset. (Citing *Goodrich* v. *Turney*, 44 Cal.App. 516 [186 P. 806]; *Johnson* v. *Krier*, 59 Cal.App. 330 [210 P. 966]; 12 Cal.Jur.2d, § 170, p. 387.)

It is well established that the property was held in joint tenancy and all parties knew this fact. As to the negotiations leading up to the signing of the listing agreement, the evidence is somewhat in conflict. Plaintiffs' agent, Mr. Malmberg, who was instrumental in obtaining Mr. Griset's signature, died and therefore did not testify at the trial. According to the evidence, Malmberg called at defendants' home to seek a listing. Mrs. Griset refused to sign the listing, saying that she was not ready to give up her home with the possibility that it (the property) would "come back on us," but she would talk it over with her daughter. Later Mr. Griset called at Malmberg's office and signed the listing. Mr. Griset told him it was community property and that it would "have to have my wife's signature to make a legal deed." Mr. Griset testified that when Malmberg first came to his home regarding the listing there was no definite understanding about selling the property; that Mrs. Griset said she wanted to talk it over with her daughter first; and that he later signed it. He further testified that two or three days before the exclusive listing expired he went to Malmberg's office, inquired about any prospective sales, and that Malmberg told him he had none and that Malmberg asked for an extension of time, and he told Malmberg he would not agree to an extension; that his wife was not satisfied with the deal; that he asked for the papers and Malmberg said he did not have them but agreed to send back to him the exclusive listing he had signed.

Plaintiffs' agent, Tolson, testified that he went to defendants' home with Malmberg. Defendants deny this fact. Tolson also testified that Mrs. Griset did most of the talking; that Mrs. Griset was hard of hearing; that she told Malmberg that Mr. Griset would go to the office and give a listing but they wanted to consult with their daughter in reference to the sale; that

Malmberg later brought the listing signed by Mr. Griset to his office, but told him Mrs. Griset had not signed it.

It affirmatively appears from the evidence in support of the findings that plaintiffs well knew that the property was community property or that it was held in joint tenancy by defendants and that it required the signatures of both to consummate any sale of the property. It also appears that Mrs. Griset would not sign any listing on the basis of $5,000 downpayment for fear that the property would "come back on them" and that this in effect would leave an obligation to pay a $7,000 real estate commission with only a $5,000 payment being made into escrow. The signing of the listing by defendants was based on the result of a conference with their daughter, who appeared to be opposed to the sale under the terms suggested. The result of her decision was not indicated. It may fairly be inferred from the testimony that Mr. Griset did sign with the understanding that his wife must also sign before the delivery would be complete and the listing would be effective as to him. Under such conditions, the trial court was authorized to so find. ■ It is a general rule that a written contract must be in force as a binding obligation to make it subject to the parol evidence rule and it cannot become a binding obligation where its delivery is conditional until the condition on which its delivery depends has been fulfilled. (*Spade* v. *Cossett,* 110 Cal.App.2d 782, 784 [243 P.2d 799]. See also *Severance* v. *Knight-Counihan Co.,* 29 Cal.2d 561 [177 P.2d 4, 172 A.L.R. 1107] ; 9 Cal.Jur.2d, § 95, p. 268.)

■ As to the finding that plaintiffs did not perform the listing agreement in full, the evidence does show that a check for $5,000 was placed in escrow by the purported purchaser. This amount was determined by plaintiffs and was not approved by the sellers. The listing agreement did not provide the amount of deposit required. Defendants were not informed as to the proposed purchaser's name or given any opportunity to determine his financial responsibility or that he was, in fact, ready, able and willing to perform the agreement in accordance with the listing agreement. That agreement provided in part as follows :

"Price $147,000.00 Payable as follows : $42,000.00 Cash out of which $7,000.00 Commission is paid. Leaving $35,000.00 Cash, and I hereby grant said broker the exclusive and irrevocable right to sell said property within said time for $_____ and to accept a deposit thereon _____.
Terms : Will pay $5,000.00 Com. on Bal. $1500.00 out of the

first $35,000.00 Bal. $3500.00 Com. to be paid as and when the rest of the purchase money is paid. The Bal. of money to be paid in 18 Months. Oil and Mineral rights split 50-50. . . . Should a deposit or amounts paid account purchase be forfeited, one-half thereof may be retained by said broker and the balance shall be paid to me. The broker's share of any forfeited deposit or amounts paid account purchase, however, shall not exceed the commission.''

The escrow instructions signed by the proposed purchaser provided for the preparation of a trust deed from the purchaser in favor of the Grisets for $105,000 and the payment of $37,000 additional before close of escrow.

There was testimony of the escrow agent that the check was received and cashed and the escrow was later cancelled by the purported purchaser and the money returned to him. There was no particular evidence as to said purchaser's readiness or ability to perform according to the listing and the escrow was not signed by the parties to be charged. There was no acceptance of the purchaser by the defendants. A small deposit of $5,000 (less than the amount of the commission) on the sale of property valued at $147,000 might well support the court's finding that plaintiffs did not perform the listing agreement in full and did not communicate a bona fide offer within the time specified in the listing. (*Brown* v. *Mason*, 155 Cal. 155 [99 P. 867, 21 L.R.A. N.S. 328] ; *Duin* v. *Security-First Nat. Bank of Los Angeles*, 132 Cal.App.2d Supp. 904 [283 P.2d 790].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied December 15, 1960, and appellants' petition for a hearing by the Supreme Court was denied January 10, 1961.