[Civ. No. 30457.   Second Dist., Div. Two.   Nov. 21, 1967.]

INA V. YOAKUM, Plaintiff and Appellant, v. E. O.
TARVER, Defendant and Respondent.

Horton & Hathaway, Lawrence R. Horton and Edward L. Lascher for Plaintiff and Appellant.

Paul R. Hutchinson and James A. Irwin for Defendant and Respondent.

FOX, J.*—This is an action to recover a real estate commission. Judgment was rendered in favor of defendant Tarver. Plaintiff has appealed.

In 1962 and for sometime prior thereto, defendant Manito, Inc. was the owner of certain improved real property known as the Monticello Motel. Although the corporation had not issued stock, defendants Nickum[1] and Tarver were the principal, if not the only, investors therein, the officers of the corporation, and conducted its business.

A dispute arose between Tarver and Nickum, and in September 1962, Nickum filed an action against Tarver in the superior court to resolve the dispute by liquidating and winding up the corporation and dividing the proceeds between Tarver and Nickum. The motel property was the only asset of defendant Manito, Inc.

For some time prior to December 14, 1962, one Joseph G. Langdon was a real estate salesman employed by plaintiff and had been negotiating with Nickum to acquire the Monticello property. He had known Nickum for some 15 years and knew of the dispute between Tarver and Nickum, and that the latter had filed a lawsuit against Tarver to liquidate the corporation and had discussed the situation wih Yoakum.

Langdon's efforts to acquire the property through Nickum having been unsuccessful, on December 14, 1962, he went to see Tarver with the object of attempting to acquire the property through him. They discussed the Nickum suit. Langdon inquired of Tarver whether he thought a deal to sell the property for $300,000 could be made. Tarver expressed the opinion that Nickum would go for a deal at that price, whereupon Langdon inquired if they would pay a broker's commission on the transaction. Tarver advised that he would agree to a commission if Nickum also agreed.

In response to Langdon's suggestion, plaintiff came to Tarver's office for the purpose of taking a listing of the property in question. The three of them discussed the proposed deal and the lawsuit that Nickum had filed against Tarver. It was upon this occasion that Tarver signed the list-

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] At the commencement of the trial upon the suggestion of the death of defendant Nickum, plaintiff dismissed count III which involved him. At the conclusion of plaintiff's case-in-chief, the motion of defendant Manito, Inc. for judgment on the first count pursuant to section 631.8, Code of Civil Procedure was granted; findings of fact with respect to defendant Manito, Inc. and the first count were waived.

ing. Questions at this point by the court of Tarver and his answers serve to clarify the situation.

"Q. [By The Court] Mr. Tarver, in December 1962 when Mrs. Yoakum came into your office to take a listing did she ask you whether you could deliver title? A. Yes, she did, sir. Q. What did you tell her? A. I told her I could not. Judge, we had a number of conversations with Mr. Langdon and Mrs. Yoakum about this lawsuit that Nickum had filed against me.

". . . . . . . . . . . .

"Q. [By The Court] Well, did you tell Mrs. Yoakum that you were the president of the corporation; that you could deliver title and Mr. Nickum had no interest in it? A. I did not, sir. I never told him [*sic*] I could deliver the property without Nickum's acceptance.

". . . .

"Q. [By The Court] But your difficulties with Mr. Nickum were all explained to Mrs. Yoakum in December? A. Yes, sir. Q. When Mrs. Yoakum first came down to your office; is that correct? A. Yes, sir."

On several occasions between December 14, 1962, and January 7, 1963, Langdon, Yoakum and Tarver discussed the problem of gaining Nickum's concurrence in the deal. The matter was discussed, in particular, on January 5, 1963, at which time plaintiff and Langdon requested Tarver to sign a deposit receipt evidencing an agreement to sell the property to Langdon or his nominee for $250,000 which was $50,000 less than the amount specified in the listing of December 14, 1962. Tarver declined to sign the deposit receipt, but advised plaintiff and Langdon that he would agree to sell at that price if Nickum would go along with it. Tarver suggested an escrow be opened for the proposed sale "to have something to present to Nickum for his acceptance or refusal."

On January 7, 1963, Langdon, plaintiff and Tarver opened an escrow for a sale to Langdon for a gross price of $250,000. The instructions recited that the sale was contingent upon obtaining a release of Nickum's lawsuit, and the escrow was instructed not to incur any further charges unless authorized in writing by plaintiff. All parties were informed that the escrow could not close without "Nickum's accepting it."

Thereafter, Tarver, Langdon and his nominee in the escrow tried to work the deal out with Nickum, but he refused to join in the escrow.

In April 1963, Nickum conveyed all of his right, title and interest in the corporation and the Monticello property to one

William Etchison who succeeded to Nickum's interest therein. Etchison refused to complete the sale to Langdon.

The trial court found, *inter alia*: "On the said December 14, 1962, plaintiff INA V. YOAKUM came to defendant E. O. TARVER and presented to him a written form of broker's listing which purportedly employed said plaintiff INA V. YOAKUM to obtain a purchaser for the said Monticello Motel at a price of $300,000.00 and for a broker's commission of six percent of the selling price of the real property described therein, to wit, the Monticello Motel. Defendant E. O. TARVER signed said written listing agreement on behalf of defendant MANITO, INC., and at the same time it was orally agreed that his authority to execute contracts on behalf of defendant MANITO, INC. was expressly conditioned upon the acquiescence, acceptance and consent of defendant JACK A. NICKUM, and defendant E. O. TARVER did inform plaintiff INA O. YOAKUM and said Joseph G. Langdon of the pendency of said action, No. 804152, and of his dispute with defendant JACK A. NICKUM."

▮ Plaintiff bases her right to recover against Tarver on the theory that he warranted his authority to act for the corporation; that he was guilty of a breach of such warrant and that she suffered damage by reason thereof.

We have concluded that plaintiff's position is not well founded and that the judgment must be affirmed.

The facts and circumstances surrounding the dispute between Nickum and Tarver and the limits on the latter's authority were disclosed to plaintiff at the very inception of this transaction. The evidence and the court's findings establish that Tarver did not warrant his authority to act for the corporation.

The testimony developed by the trial judge in his examination of Tarver was to the clear effect that he could not deliver title to the property in question and that he so informed the plaintiff and Mr. Langdon in December 1962. It was made clear by Tarver that he could not deliver title to the property without Nickum's joining in the transaction. This fact was implicit in the finding, quoted *supra,* that at the time he signed the listing it was orally agreed that his authority to execute contracts on behalf of the corporation was "conditioned upon the acquiescence, acceptance and consent of defendant" Nickum, and that Tarver had informed the plaintiff of the pendency of Nickum's lawsuit against him and the dispute between him and Nickum. The evidence

clearly supports this finding. Thus, it is apparent that Tarver made it known to the plaintiff at the outset of this transaction that he did not have authority to bind the corporation for the sale of the Monticello property and that he also explained his dispute with Nickum to plaintiff at his initial meeting with her.

The rationale of the rule that the agent is not personally liable in such circumstances is ably presented in *Weinstein* v. *Rothberg*, 87 Ga.App. 94 [73 S.E.2d 106]. At page 110 the Georgia court stated: " ' "To give a party a right of action against a professed agent, he must have been ignorant of the want of authority on the part of the latter and have acted upon the faith of the representations, express or implied, that the professed agent had the authority assumed. Hence, if the party complaining is fully cognizant of all the facts touching the agent's authority, the latter will not be liable. . . ." ' "

In *Leroy* v. *Jacobsky*, 136 N.C. 443 [48 S.E. 796, 67 L.R.A. 977], the Supreme Court of North Carolina was confronted with a plaintiff's claim that the guardian of a minor was liable upon a contract signed in a representative capacity to sell the interest of his ward in real property. The guardian had already represented to plaintiff that court confirmation would be required. The guardian applied for court confirmation, but in the interim, the ward became of age and disaffirmed the contract. In holding that the guardian was not personally liable the court observed (p. 800): " 'If the party with whom the agent has contracted knew that the agent had no authority, or was cognizant of all the facts upon which the assumption of authority was based—as, for example, when both parties labored under a mistake of law with refernce to the liability of the principal—the agent is not liable either in tort or upon the contract.' [Citations.] In *Michael* v. *Jones*, 84 Mo. 578, the justice writing for the court says: 'But I am satisfied that under the best considered modern decisions the principle invoked by the plaintiff cannot be carried to such an extent. The true rule, I think, is that when all of the facts are known, and the mistake is one of law as to the liability of the principal, the fact that the principal cannot be held is no ground for charging the agent with liability.' Ruffin, J., in *Fowle* v. *Kerchner, supra* [87 N.C. 56], says: 'The general rule is that, whenever a party assumes to act as agent for another if he has no authority, or if he exceed his authority, he will be held to be personally liable to the party with whom he deals, for the reason that by holding himself out as having authority he misleads the other party

into making the agreement. *But the rule is founded upon the supposition . . . that the want of authority is unknown to the other party, or, if known, that the agent undertakes to guaranty a ratification of the act; and when this want of authority is known, and it is clear that the agent did not undertake to guaranty a ratification, it results that the agent is not personally bound.' . . .''* (Italics added.)

In *Montgomery* v. *Levy*, 406 Pa. 547 [177 A.2d 448], the Supreme Court of Pennsylvania held that where the plaintiff knew or should have known that the agent of a disclosed principal exceeded his authority and made promises for his principal beyond his right, the failure of the principal to perform does not impose liability upon the agent.

The Restatement Second of the Law of Agency embodies the rationale of these authorities. In comment *a* following section 331 it is stated: "An agent may indicate that he is not sure of his ability to make the principal a party. As a seller may refuse to warrant his power to make an effective transfer of the title of goods, so likewise an agent may rebut the inference of a representation of authority usually drawn from the fact that he purports to act for another. He can do this by conduct from which the other party has reason to infer that he refuses to give the warranty. One method of doing this is by fully disclosing to the other the sources of his authority, from which the other can draw his own inferences. The risk of making a mistake of law or fact from known data is then upon the other. Unless he indicates otherwise, an agent purporting to disclose the sources of his authority represents that he is making a full disclosure of all relevant facts known to him.'' California is in conformity with these principles. In *D. B. Rose, Inc.* v. *Hodge Transp. System*, 121 Cal.App. 332, the court stated at page 343 [8 P.2d 913] : "However, Hodge is not personally liable under the above section of the code for two reasons. First, he was not the agent of the Hodge Transportation System. Second, he told Canavan and Rose he had no authority to execute the documents except what he received from the creditors' committee. So again assuming that he was the agent and had no authority, the plaintiff would be estopped on the plainest principles of justice from holding Hodge liable personally.''

It is thus clear that under the evidence in this case, the findings of the trial court and these authorities, plaintiff has no basis for recovery against Tarver on the theory of a breach of warranty of his authority.

■ We reach the same result in this case on the theory that the listing agreement was conditional, that is, it was not effective until approved by Nickum. *Tolson* v. *Griset,* 186 Cal.App.2d 497 [9 Cal.Rptr. 110], is here apposite. That was an action by a real estate broker to recover a real estate commission of $7,000 upon a written listing of property owned by a husband and wife. The listing was signed only by the defendant husband. At the time of singing, the husband orally informed plaintiff that the real property was held jointly by him and his wife and that his wife's signature and consent to the sale of the property was necessary and that his listing of the property for sale was contingent upon her signing a listing with plaintiff for the sale of the property. The wife did not sign the listing and did not agree to the sale of the property. Plaintiff brokers were informed that the wife's agreement to sell the property was a condition precedent to the taking effect of the contract and listing between the plaintiffs and defendant husband. The brokers procured a purchaser for the property, opened an escrow and deposited $5,000 therein. The husband and wife refused to sign the escrow instructions or proceed with the sale. The court found that the listing did not constitute a contract between plaintiffs and defendant husband because the contract was dependent upon the condition precedent that defendant's wife agree to the listing and sale, and gave judgment for defendants. On appeal plaintiffs argued that the evidence did not support the court's finding that performance by defendant husband under the listing agreement was contingent upon or subject to any condition precedent relating to signature and agreement to the listing or sale on the part of defendant wife and argued that they should have recovered judgment against defendants. The Court of Appeal noted that it affirmatively appeared in the evidence that plaintiffs knew the property was either community property or held in joint tenancy by defendants and therefore required the signature of both husband and wife to consummate any sale of the property. The court commented at page 500:

"It is a general rule that a written contract must be in force as a binding obligation to make it subject to the parol evidence rule and it cannot become a binding obligation where its delivery is conditional until the condition on which its delivery depends has been fulfilled."

Thus, *Tolson* is a case where one party signed a listing agreement, orally informed the broker that consent of another

party was required and when that consent was not forthcoming upon the production of a purchaser the parties were sued by the broker for a commission. The information communicated to the broker was oral and was admitted in evidence, even though it was contended that the parol evidence rule should preclude its admission. *Tolson* is clear authority in support of the parol evidence in the instant case to the effect that Tarver did not have authority to effectively dispose of the Monticello motel; that Nickum's approval and participation was essential and that the disposition of his lawsuit against Tarver was a condition precedent to an effective deal.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied December 11, 1967, and appellant's petition for a hearing by the Supreme Court was denied January 17, 1968.